[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On October 17, 2000, the Department of Children and Families ("DCF") filed a petition for the termination of parental rights of Desiree B. and Shane C., Sr. with respect to their son, Shane C., Jr. On April 14, 2000, the Department of Children and Families ("DCF") filed a petition for the termination of parental rights of Desiree B. and Michael Q. with respect to their daughter, Shae Lynn B. As to the respondent-mother, the termination petition alleged that Desiree B. failed to rehabilitate herself within a reasonable period of time so as to encourage the belief that she could assume the role of a responsible parent for her son or her daughter. See C.G.S. § 17-112 (j)(3)(B). As to the respondent-father, Shane C., Sr., the termination petition alleged that he abandoned his minor son, Shane C., Jr., and that there existed no ongoing parent-child relationship. See C.G.S. § 17-112 (j)(3)(A) and (D). As to the respondent-father, Michael Q., the termination petition CT Page 13211 alleged that he abandoned his minor daughter, Shae Lynn B., that he failed to rehabilitate himself within a reasonable period of time so as to encourage the belief that he could assume the role of a responsible parent for his daughter, and that there existed no ongoing parent-child relationship. See C.G.S. § 17-112 (j)(3)(A), (B) and (D).
The trial commenced on May 21, 2001 and concluded on May 24, 2001. From the evidence presented at the hearing and the applicable case law, the Court grants the termination of parental rights with respect to both Shane C., Jr., and Shae Lynn B. as to each respondent-parent.
The Court finds the following:
Facts:
Shane C., Jr. was born on February 1993. At the time of his birth, respondent-mother Desiree B. was fourteen years old and respondent-father Shane C., Sr. was twenty-two years old. Shane C., Jr.'s parents never married. DCF has been involved with this child since October of 1995 to the present. He has resided in six foster care homes during his placement with DCF. His current foster home placement commenced in April of 1999. He has established a strong and solid bond with this foster care family. The foster care family would like Shane C., Jr. as a permanent member of their family. Shane C., Jr. came to his current foster family with many behavioral problems. He was separated from his sister, Shae Lynn B., because he was exceptionally oppositional, angry, and hyperactive and threatened to kill his sister. He is currently being treated for Attention Deficit Hyperactive Disorder. The respondent-mother, Desiree B., did not accept this diagnosis, and instead believed that his behavior problems were simply due to Shane C., Jr. missing her. Shane C., Jr. has made remarkable progress with his current foster family. Shane C., Jr. has clearly established rules and routines at his current foster home. When asked what he likes about his biological mother, Shane C., Jr. indicated that he likes her because "she lets me do whatever I want. Not light up lighters and matches." See State's Exhibit #8, Report of Dr. Robert Neems, court-appointed psychologist. Shane C., Jr. has no recollection of living with respondent-mother. He has little to no recollection of respondent-father, Shane C., Sr. and, in fact, may have the confused belief that respondent-father, Michael Q., is in fact his biological father. The credible evidence establishes that Shane C., Jr. has no bond with respondent-father, Shane C., Sr. and while he clearly has affectionate feelings towards respondent-mother, Desiree B., these feelings do not constitute a relationship that is consistent with a parent-child bond. The credible evidence establishes that Shane C., Jr. is bonded with his current foster parents as his mother and father and looks to them for guidance and support. CT Page 13212
Shae Lynn B. was born on August 1996. At the time of her birth, respondent-mother, Desiree B., was eighteen years old and respondent-father, Michael Q., was twenty-six years old. Shae Lynn B.'s parents never married. DCF has been involved with this child since August of 1997 to the present. She has resided in three foster care homes during her placement with DCF. Her current foster home placement commenced in August of 1999. She has made significant progress in her current home and has established a strong and solid bond with this foster care family. The foster care family would like Shae Lynn B. as a permanent member of their family. When Shae Lynn B. arrived at her current foster home she had virtually no language skills and had not even started toilet training despite the fact that she was three years old. Under the guidance of her foster family, Shae Lynn B. has been toilet trained, is verbal, and has demonstrated improved social skills. There are continued concerns with her foster parents in that she is indiscriminate with strangers. As noted by the court-appointed psychologist, Dr. Robert Neems, Shae Lynn B. is in need of a permanent and stable home now and that future moves should be minimized. See State's Exhibit #8. During her visit with Dr. Robert Neems, the respondent-mother did not set boundaries for Shae Lynn B., and instead let the child jump off benches in the waiting area. Respondent-mother throughout the interaction attempted to manipulate Shae Lynn B. into feeling needy by continuously introducing themes of loss while playing with the child. Shae Lynn B. displays affectionate feelings towards Desiree B., however, the credible evidence establishes that these feelings do not constitute a relationship that is consistent with a mother-daughter bond. Similarly, Shae Lynn B. displays affectionate feelings towards Michael Q., however, the credible evidence establishes that there exists merely a weak relationship between the two of them largely influenced by the respondent-father's manipulative behavior with this child. The respondent-father does not have a father-daughter bond with Shae Lynn B. The credible evidence establishes that Shae Lynn B. is bonded with her foster parents as her mother and father and looks to them for guidance and support.
Respondent-mother Desiree B. was born on February 20, 1978. She had a chaotic upbringing due to her mother's mental illness. She gave birth to Shane C., Jr. at fourteen years old and did not complete high school. Subsequently, she earned a GED. She has a minimal work history: her jobs have all resulted in her being fired or quitting. Her homelessness has been a chronic problem for Desiree B. She has been subject to two evictions. She stays with relatives and friends randomly. Her whereabouts are often unknown; at one point, she left Connecticut along with her children without authorization from DCF or the court. Her whereabouts became known only after she appeared on "The Jerry Springer Show". Her relationship with men add to the troubling evidence of her homelessness. CT Page 13213 She has been involved continuously in domestic relationships that involved violence and substance abuse. As recently as May 12, 2000, she and her then live-in boyfriend, Jamie C. were arrested for domestic violence charges against each other. In plain view on the kitchen stove were twenty-one packets of marijuana. She has a history of substance abuse and random testing gave positive reactions for marijuana. Desiree B. did not submit to all random testing as requested by DCF to determine her overall substance abuse. Other court expectations were also treated as "selective" by Desiree B. She did not participate fully in the counseling that was expected despite the fact that numerous referrals had been made on her behalf. It was the opinion of the court-appointed psychologist, Dr. Robert Neems, that Desiree B.'s primary problems have been her impulsivity, her very poor judgment, her oppositional behavior, her drug use, and her tendency to blame others for her problems. Dr. Neems found that "[Desiree] B. has been very oppositional in refusing to comply with court expectations. She has failed to consider the effect of her decisions on her children. Rather than accept that her very poor decisions have led to her predicament, she has a very strong tendency to blame her problems on others." See State's Exhibit #8. Dr. Neems concluded that "there is a clear risk that her impulsive, oppositional functioning will continue to prolong her chaotic life style and to delay indefinitely the return of her children to her." Based on the credible evidence presented at the trial, the Court accepts and credits Dr. Neems' opinion in reaching its decision with respect to the termination of respondent-mother's parental rights.
Respondent-father Shane C., Sr. was born on February 8, 1971. He is a resident of Cleveland, Ohio and has a criminal history. Little else is known about respondent-father Shane C., Sr. due to his complete lack of interest in his son, Shane C., Jr. There is only one recorded visit with the child and this occurred on January 5, 1997. He has not participated in the neglect or termination proceedings with respect to his child. He has not supported Shane C., Jr. physically, emotionally, or financially. According to the respondent-mother, Shane C., Sr. became involved with her when she was thirteen years old and he was approximately twenty years old. She became pregnant with their child when she was fourteen years old. Shane C., Sr. is reported to be inconsistent in his employment, an abuser of alcohol and unfaithful to the respondent-mother. After respondent-mother had Shae Lynn B., Shane C., Sr. contacted her and asked her to move to Cleveland to be with him. Respondent-mother removed both children from the State without authorization and did go to Cleveland to be with Shane C., Sr. Within two weeks of her arrival, Shane C., Sr. left respondent-mother for another woman. Shane C., Sr. has no relationship with his son, Shane C., Jr.
Respondent-father Michael Q. was born August 7, 1970. His father left CT Page 13214 when he was approximately 8 years old and never continued a relationship with the family. Michael Q. has a sporadic work history due to his chronic involvement in the criminal justice system. According to Michael Q., he sold drugs to make money. He is a convicted felon who has spent over six years in prison. He and respondent-mother met while he was on a 24-hour furlough from prison in 1994. Respondent-mother was one month pregnant with Shae Lynn B. when he was sent back to prison. During the course of his evaluation with the court-appointed psychologist, he was manipulative even with Dr. Neems in trying to make the evaluator believe that no one has ever given him a chance. This behavior is consistent with the type of behavior he displays towards his daughter. He does not attempt to give the child the sense of love and concern of a parent towards a child. Rather the credible evidence established that he believed that his child, Shae Lynn B., needed to demonstrate to him that she loved him. He engaged in overwhelming conduct towards the child that was noted to make her feel uncomfortable. He suggested a bizarre belief to her: he told her to wear red in order to keep evil away. He was not conscientious in visiting her and lapsed for a long period of time after his release from prison. His claim that DCF is at fault for this lapse is not credited by the court. The credible evidence establishes that there exists no parent-child bond between Michael Q. and Shae Lynn B.
 Legal Analysis
Reunification Efforts:
DCF must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent." C.G.S. § 17a-112 (j). In making this effort DCF is not required to do everything possible, but rather is required to do everything reasonable to reunify the child with the parent. In re DanielC., 63 Conn. App. 339, 361 (2001). DCF should not make reunification an impossibility. See Id.
As to Shane C. Jr.:
The Court finds by clear and convincing evidence that DCF made reasonable efforts to reunify Shane C., Jr. with his parents, Desiree B. and Shane C., Sr.
Respondent-mother selectively took advantage of the DCF efforts: namely she participated in individual and family counseling only when she chose to do so, and during her allowed visits, when she chose to attend, detrimental setbacks manifested themselves in Shane C., Jr. which included his increased use of profane language and his increased display of behavioral problems. Her claim that DCF did not consider her family as CT Page 13215 a resource is found to be without merit.
Respondent-father made no effort to reunify with his child, in fact, on only one occasion contacted DCF despite his knowledge of his son's circumstances. Further efforts on the part of DCF with respect to reunify Shane C., Jr. with respondent-father simply were not appropriate or possible.
As to Shae Lynn B.:
The Court finds by clear and convincing evidence that DCF made reasonable efforts to reunify Shae Lynn B. with her parents, Desiree B. and Michael Q.
Respondent-mother selectively took advantage of the DCF efforts: namely she participated in individual and family counseling only when she chose to do so, and during her allowed visits, when she chose to attend, little to no limits were set by Desiree B. with Shae Lynn B. While there was affection displayed, respondent-mother did not establish the bond of parent-child between them. Her claim that DCF did not consider her family as a resource is found to be without merit.
Respondent-father made little effort to reunify with his child despite his knowledge of his daughter's circumstances. Further efforts on the part of DCF with respect to reunify Shae Lynn B. with respondent-father simply were not appropriate based on the father's manipulative and overly intrusive behavior at the visits that he chose to attend. His claims that DCF prevented his visits and that DCF did not consider his family as a resource are found to be without merit.
Adjudicatory Findings:
As to Shane C. Jr.:
The court finds by clear and convincing evidence that respondent-father Shane C., Sr. abandoned his minor child in the sense that he failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of Shane C., Jr. The Court's finding focuses on the respondent-father's conduct. While his lack of interest in this child is not the sole criterion in determining abandonment, the Court finds that Shane C., Sr. made no attempt to achieve contact with his son either through telephone calls, cards and gifts, or any level of financial support. Respondent-father has not demonstrated any concern or responsibility for the welfare of this child. Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no CT Page 13216 concern for the child's welfare. In re Roshawn R., 51 Conn. App. 44, 52
(1998).
As to the second ground alleged by the State against respondent-father Shane C., Sr., the court finds by clear and convincing evidence that he has no ongoing parental relationship with Shane C., Jr. and that there is insufficient time to establish one. The credible evidence establishes that Shane C., Jr. does not recognize Shane C., Sr. as his father. Respondent-father has afforded this child no attention or time. The Court finds that it would be detrimental to the child's best interest to allow time for such a relationship to develop. In re John G., 56 Conn. App. 12,22 (1999). Consideration of a child's feelings and present memories of the natural parent is of paramount importance in determining whether a parent-child relationship exists as well as whether the parent created the conditions under which the petition for termination was filed. In weighing this consideration, the clear and convincing evidence establishes that the State sustained its burden of proof in establishing no ongoing relationship between respondent-father and Shane C., Jr.
The court finds by clear and convincing evidence that Desiree B. has failed to rehabilitate to such degree as would encourage the belief, that within a reasonable time, considering the age and needs of this child, that she could assume a responsible position in Shane C., Jr.'s life.
The Court finds that the credible evidence establishes that Shane C., Jr. was neglected and uncared for and has been in the custody of DCF continuously since August of 1997, with the initial involvement dating back to October of 1995 and that the respondent-mother had been provided specific steps on March 26, 1996, September 5, 1997, and July 29, 1998 to take to facilitate the return of this child and that she has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of this child, she could assume a responsible position (as a parent) in the life of this child. See, In re Eden F. 250 Conn. 674, 706, reargument denied, 251 Conn. 924 (1999). The Court defines "`personal rehabilitation' as used in [C.G.S. § 17a-112] as . . . the restoration of a parent to his or her former constructive and useful role as a parent." In re Felicia D., 35 Conn. App. 490, 501, cert. denied,231 Conn. 931 (1994).
The credible evidence establishes that the respondent-mother was, at best, erratic in both securing housing and employment and did not consider the impact of her choices in these areas or its effects on either of her children. Desiree B. showed poor judgment, impulsivity, and oppositional behavior. All of these characteristics were demonstrated throughout the pending matter regarding Shane C., Jr. In fact, despite CT Page 13217 her knowledge of the pending proceedings, she left the State without having secured any permanent housing or support system and without notifying any of the parties (DCF, her attorney, the child's attorney) involved in this action. The credible evidence establishes that it was only when respondent-mother appeared on "The Jerry Springer Show" that DCF was able to locate her whereabouts with the children.
Upon her return to Connecticut, respondent-mother continued to demonstrate poor judgment in failing to attend visitations with her children, failing to attend counseling sessions, getting fired from her employment, getting evicted from two separate residences, and establishing a relationship with a new boyfriend who engaged in conduct that resulted in domestic violence and the presence of illegal drugs in the home.
Based upon the Court's review of the evidence presented at trial, the Court finds that the respondent-mother had been given a reasonable amount of time for her personal rehabilitation and has failed to do so in any meaningful manner. The Court finds that respondent-mother created conditions whereby termination was sought, and mother failed to avail herself of reunification services. In re Kelly S., 29 Conn. App. 600,616-18 (1992).
As to Shae Lynn B.:
As to the respondent-father, Michael Q., the Court finds by clear and convincing evidence that he abandoned his minor daughter, Shae Lynn B., that he failed to rehabilitate himself within a reasonable period of time so as to encourage the belief that he could assume the role of a responsible parent for his daughter, and that there existed no ongoing parent-child relationship between them.
The court finds by clear and convincing evidence that respondent-father Michael Q. abandoned his minor child in the sense that he failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of Shae Lynn B. The Court's finding focuses on the respondent-father's conduct. While his lack of interest in this child is not the sole criterion in determining abandonment, the Court finds that Michael Q. made minimal attempts to have contact with his daughter either through telephone calls, cards and gifts, or any level of financial support. Michael Q. has not demonstrated care and concern for the welfare of this child, but rather his care and concern are self-motivated in that he needs to be acknowledged and loved by the child.
Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact CT Page 13218 with the child, and demonstrates no concern for the child's welfare. Inre Roshawn R., 51 Conn. App. 44, 52 (1998). Michael Q. allowed long periods of time to interrupt his visitation of Shae Lynn B. His limited interaction with the child was overly intrusive, unsettling for the child, and clearly intended only to build up his own feelings of worth.
The Court acknowledges that during a period of time respondent-father was incarcerated. Incarceration does not, in itself, constitute abandonment. In re Juvenile Appeal, 187 Conn. 431, 443 (1982). A parent's failure to utilize available opportunities to maintain contact with a child will not be excused based solely on the restrictive nature of the incarceration. See id. Respondent-father did not utilize the opportunities available to him in a manner consistent with his concern for the child, but rather the credible evidence establishes that his contact was only generated by self-interest.
As to the second ground alleged by the State against respondent-father Michael Q., the court finds by clear and convincing evidence that Michael Q. has no ongoing parental relationship with Shae Lynn B. and that there is insufficient time to establish one. The credible evidence establishes that Shae Lynn B. does not recognize Michael B. as her father. The Court finds that it would be detrimental to the child's best interest to allow time for such a relationship to develop. In re John G., 56 Conn. App. 12,22 (1999).
Respondent-father had the opportunity to establish a relationship with his daughter. By his repeated involvement in the criminal justice and his inability to even manage his own affairs, as testified to by the respondent-father's own mother, he has failed to establish a father-daughter relationship. See In re Kezia M., 33 Conn. App. 12, 21-22, cert. denied, 228 Conn. 915 (1993). Any interaction that respondent-father had with Shae Lynn B. has been lost due to the child's young age or any that is recollected by the child would only be distressing due to the demands that the father placed on the child during the most recently afforded visits. Consideration of a child's feelings and present memories of the natural parent is of paramount importance in determining whether a parent-child relationship exists as well as whether the parent created the conditions under which the petition for termination was filed. In weighing this consideration, the clear and convincing evidence establishes that the State has sustained its burden of proof in establishing no ongoing relationship between respondent-father and Shae Lynn B.
As to the third ground alleged by the State against respondent-father Michael Q., the court finds by clear and convincing evidence that Michael Q. has failed to rehabilitate to such degree as would encourage the CT Page 13219 belief, that within a reasonable time, considering the age and needs of this child, that he could assume a responsible position in Shae Lynn B.'s life.
The Court finds that the credible evidence establishes that Shae Lynn B. was neglected and uncared for and has been in the custody of DCF continuously since August of 1997 and that the respondent-father had been provided specific steps on July 29, 1998 to take to facilitate the return of this child and that he has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of this child, he could assume a responsible position (as a parent) in the life of this child. See, In reEden F., 250 Conn. 674, 706, reargument denied, 251 Conn. 924 (1999). The Court defines "`personal rehabilitation' as used in [C.G.S. § 17a-112] as . . . the restoration of a parent to his or her former constructive and useful role as a parent." In re Felicia D., 35 Conn. App. 490, 501, cert. denied, 231 Conn. 931 (1994).
The credible evidence establishes that the respondent-father was chronically involved in the criminal justice system, was unable to successfully address his narcotics addiction, and was sporadic in securing housing and employment. His lifestyle had a direct and negative effect on his relationship with his daughter. According to the testimony of Dr. Robert Neems, Michael Q. is manipulative, unstable and puts his own needs and feelings over that of the child. All of these characteristics were demonstrated throughout the pending matter regarding respondent-father's interactions with Shae Lynn B.
During the times respondent-father was not incarcerated, he continued to demonstrate poor judgment in failing to attend visitations with his child, failing to attend counseling sessions (with respect to substance abuse), failing to cooperate with probation and, subsequently, being arrested on new criminal charges.
Based upon the Court's review of the evidence presented at trial, the Court finds that the respondent-father had been given a reasonable amount of time for his personal rehabilitation and has failed to do so in any meaningful manner.
The court finds by clear and convincing evidence that respondent-mother Desiree B, has failed to rehabilitate to such degree as would encourage the belief, that within a reasonable time, considering the age and needs of this child, that she could assume a responsible position in Shae Lynn B.'s life.
The Court finds that the credible evidence establishes that Shae Lynn CT Page 13220 B. was neglected and uncared for and has been in the custody of DCF continuously since August of 1997 and that the respondent-mother had been provided specific steps on September 5, 1997 and July 29, 1998 to take to facilitate the return of this child and that she has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of this child, she could assume a responsible position (as a parent) in the life of this child. See, In re Eden F., 250 Conn. 674, 706, reargument denied,251 Conn. 924 (1999). The Court defines "`personal rehabilitation' as used in [C.G.S. § 17a-112] as . . . the restoration of a parent to his or her former constructive and useful role as a parent." In reFelicia D., 35 Conn. App. 490, 501, cert. denied, 231 Conn. 931 (1994).
The credible evidence establishes that the respondent-mother was, at best, erratic in both securing housing and employment and did not consider the impact of her choices in these areas or its effects on either of her children. Desiree B. showed poor judgment, impulsivity, and oppositional behavior. All of these characteristics were demonstrated throughout the pending matter regarding Shae Lynn B. In fact, despite her knowledge of the pending proceedings, she left the State without having secured any permanent housing or support system and without notifying any of the parties (DCF, her attorney, the child's attorney) involved in this action. The credible evidence shows that it was only when respondent-mother appeared on "The Jerry Springer Show" that DCF was able to locate her whereabouts with the children.
Upon her return to Connecticut, respondent-mother continued to demonstrate poor judgment in failing to attend visitations with her children, failing to attend counseling sessions, getting fired from her employment, getting evicted from two separate residences, and establishing a relationship with a new boyfriend who engaged in conduct that resulted in domestic violence and the presence of illegal drugs in the home.
Based upon the Court's review of the evidence presented at trial, the Court finds that the respondent-mother had been given reasonable amount of time for her personal rehabilitation and has failed to do so in any meaningful manner. The Court finds that respondent-mother created conditions whereby termination was sought, and mother failed to avail herself of reunification services. In re Kelly S., 29 Conn. App. 600,616-18 (1992).
Required Findings:
Once the court finds that the allegations of the petition have been proven by clear and convincing evidence, the court must find, also by CT Page 13221 clear and convincing evidence, that termination is in the best interests of each child. In re Roshawn R., 51 Conn. App. 44, 52 (1998). "In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors." In re Tabitha P.,39 Conn. App. 353 (1995).
The Court having considered the credible evidence presented at trial as to each individual child makes the following findings:
1. Each respondent-parent had the opportunity to engage in timely and appropriate services provided to facilitate the reunion of each child with the parent. As to the respondent-mother these services included, but were not limited to: housing assistance, addiction assistance, counseling and parenting groups; as to the respondent-father, Michael Q. these services included housing assistance and addiction assistance, as well as his obligation to refrain from further involvement in the criminal justice system; as to the respondent-father, Shane C., Sr. no services were given due to his lack of interest and involvement in the proceedings;
2. DCF made reasonable efforts to reunite each child with his! her family pursuant to the federal Child Welfare Act of 1980;
3. The terms of respondent-mother's specific steps are found in State's exhibits #1-3. The credible evidence shows that mother did not fulfill these requirements and continues to struggle with the same issues currently. The terms of respondent-father Michael Q.'s specific steps are found in State's exhibit #4. The credible evidence shows that Michael Q. did not fulfill these requirements even minimally. There are no terms for respondent-father Shane C., Sr.'s due to his lack of interest and involvement in the proceedings. The credible evidence shows that Shane C. Sr. did not participate in any manner in these proceedings;
4. Each child has developed feelings and strong emotional ties towards the foster parents with whom they have lived with since August of 1999. Each child looks to their foster family for care, comfort and support;
5. Shane C., Jr. is eight years old; Shae Lynn B. at the time of the hearing was four years old and has since turned five years old;
6. Respondent-mother has not adjusted her circumstances to make it in the best interest of either child to return to her home in the foreseeable future. The Court finds that her contact was sporadic and that the contact was often inconsiderate of the children's feelings by either promising things that did not or could not happen and by permitting confusing and tumultuous situations to exist even during supervised visitations. Respondent-mother's limited communication with CT Page 13222 the foster family of Shane C., Jr. included driving by their home and yelling at the child that she loved and missed him. Respondent-father Michael Q. had minimal and often inappropriate contact with his daughter Shae Lynn B. and no contact with her foster family. Respondent-father Shane C., Sr. has had only one known contact with his son in 1997 and no contact with the foster family;
7. None of the respondent-parents have been prevented from maintaining a meaningful relationship with the child by unreasonable acts of the child, the other parent, or any other person or by economic circumstances. The suspending of each respondent-father's visits was reasonable in light of the circumstances presented at trial.
These seven statutory factors are guidelines for the court and not prerequisites that must be proven before termination of parental rights is ordered. In re Quanitra M., 60 Conn. 96, 104, cert. denied, 255 Conn. 903
(2000). DCF is not required to prove by clear and convincing evidence each of the seven factors prior to the court's finding that termination of parental rights is in the child's best interest. Id., 105. This Court determines that based on the facts and the evidence presented that each of these factors has in fact been established by clear and convincing evidence as to each child.
Disposition:
A hearing for a contested termination of parental rights has two phases: (1) Adjudication, in which the court determines whether a statutory ground for termination exists by clear and convincing evidence, and (2) Dispositional, in which the court determines whether termination is in the best interests of the child. In re Kasheema L.,56 Conn. App. 484, 487, cert. denied, 252 Conn. 945 (2000). Evidence on adjudication is limited to events preceding the filing of the petition or the latest amendment. Evidence on disposition includes events occurring through the final hearing. In re Tabitha P., 39 Conn. App. 353, 367
(1995).
The Court finds that the grounds for termination alleged against each respondent-parent have been proven by clear and convincing evidence. The Court has made the seven written findings required by law, all of which weigh in favor of termination being in each individual child's best interest. "The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of its environment." In re Shyina B., 58 Conn. App. 159, 167
(2000).
The Court concludes from clear and convincing evidence that it is in CT Page 13223 the best interest of Shane C., Jr. to have permanency and stability in his life. Accordingly, it is in his best interests that his parents' rights to him be terminated.
The Court therefore orders that a termination of parental rights enter with respect to Shane C., Sr. and Desiree B. The Court appoints the Commissioner of the Department of Children and Families as the statutory parent. The Court further orders a permanency and review plan to be filed for Shane C., Jr. in accordance with State and Federal law.
The Court concludes from clear and convincing evidence that it is in the best interest of Shae Lynn B. to have permanency and stability in her life. Accordingly, it is in her best interests that her parents' rights to her be terminated.
The Court therefore orders that a termination of parental rights enter with respect to Michael Q. and Desiree B. The Court appoints the Commissioner of the Department of Children and Families as the statutory parent. The Court further orders a permanency and review plan to be filed for Shae Lynn B. in accordance with State and Federal law.
JOAN K. ALEXANDER, JUDGE CHILD PROTECTION SESSION