# In re Felicia D.*
## (12593)

Dupont, C. J., and Foti and Landau, Js.

Argued April 28—decision released July 8, 1994

*Barbara J. Claire,* for the appellant (respondent).

*Nina F. Elgo,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney gen-

---

\* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 4166B.2, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

eral, and *Susan T. Pearlman, Benjamin Zivyon* and *Carolyn Querihero,* assistant attorneys general, for the appellee (petitioner).

LANDAU, J. The respondent mother appeals from the judgment of the trial court granting termination and neglect petitions filed by the department of children and families (DCF)[1] as to her two daughters, Felicia and Janelle. The respondent claims that the trial court improperly (1) denied her motion to dismiss the termination petition regarding Felicia, (2) held that DCF had proved by clear and convincing evidence that she had failed to rehabilitate herself pursuant to General Statutes § 17a-112 (b),[2] (3) held that DCF had proved that

---

[1] The department of children and youth services (DCYS) is now known as the department of children and families (DCF).

[2] General Statutes § 17a-112 (b) provides: "The superior court upon hearing and notice, as provided in sections 45a-716 and 45a-717, may grant such petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that, with respect to any consenting parent, such parent has voluntarily and knowingly consented to termination of his parental rights with respect to such child or that, with respect to any nonconsenting parent, over an extended period of time, which, except as provided in subsection (c) of this section, shall not be less than one year: (1) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; or (2) the parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child; or (3) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. Nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights; or (4) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best inter-

she had denied Janelle necessary care by reason of act or acts of omission or commission, (4) held that DCF had proved by clear and convincing evidence that the children's best interests were served by the termination of her parental rights.

The following facts are relevant to this appeal. Felicia was born on December 29, 1986. After Felicia had been admitted to the hospital on several occasions, DCF filed a neglect petition on April 4, 1987. Felicia was adjudicated uncared for by agreement of the parties on June 9, 1987, and the court committed her to DCF for an eighteen month period. The trial court extended the commitment period on two occasions, November 18, 1988, and April 20, 1990. Effective October 20, 1991, the trial court revoked the commitment, and entered an order of protective supervision for six months, permitting Felicia to return to her mother's custody subject to certain terms and expectations.[3]

Janelle, Felicia's younger sister, was born to the respondent on April 16, 1991. On January 11, 1992, Janelle sustained serious physical injuries while in the mother's care. Janelle was flown by Life Star helicopter to Hartford Hospital where she was diagnosed as suffering from a skull fracture, subdural hematoma, and bruising on the skull, buttocks and anus. On January 15, 1992, DCF filed a neglect petition in the interest of Felicia and coterminous petitions in the interest of Janelle in the Superior Court. On February 26, 1992, the trial court, upon the agreement of the parties, adjudicated both Felicia and Janelle neglected as alleged

est of the child. If the court denies a petition for consent termination of parental rights, it may refer the matter to an agency to assess the needs of the child, the care the child is receiving, and the plan of the parent for the child."

[3] The court set expectations that required the respondent, inter alia, to cooperate with home based services including the visiting nurse service and the foster grandparents program.

in the petitions. The court committed Janelle to the custody of DCF for a period of eighteen months, and permitted Felicia to remain at her mother's home subject to eighteen months of protective supervision. The protective supervisory order prohibited the mother from allowing any man into her residence without obtaining advance approval from DCF. On April 10, 1992, the trial court, faced with allegations of a violation of that supervisory order, issued an ex parte order of temporary custody of Felicia to DCF. On the same date, DCF moved to open and modify the disposition of Felicia's neglect adjudication and to have her committed to the department.

On May 22, 1992, DCF filed petitions with the trial court seeking the termination of the respondent's parental rights to both Felicia and Janelle. A hearing was held between January 11 and March 1, 1993. On January 15, 1993, the mother filed a motion to dismiss the petition as to Felicia, claiming that the court lacked subject matter jurisdiction. On February 5, 1993, the trial court orally denied the mother's motion to dismiss and granted the petitions, and, on May 21, 1993, issued a memorandum of decision addressing both.[4]

I

The respondent argues that the trial court improperly denied her motion to dismiss the petition as to Felicia because it lacked subject matter jurisdiction in three respects: (1) the petition alleged that Felicia was committed to the custody of DCF; (2) the petition alleged as the sole ground for termination the respondent's failure to rehabilitate; and (3) the petition alleged

---

[4] The memorandum stated that because the court had found sufficient proof to grant the termination petitions, the pending motion requesting a modification of the existing disposition of the protective supervisory order converting it to a commitment was moot.

that this ground existed for a period greater than one year. The respondent claims that none of these allegations is true.

## A

The respondent contends that because the petition form indicated that Felicia was committed to DCF, when in fact, she was not, the subject matter jurisdiction of the trial court was never invoked.

It is clear from the facts of this case that the trial court proceeded in this action under the supposition that Felicia was not committed. The trial court had committed Felicia to DCF in the past on June 9, 1987, and twice extended that period. On October 8, 1991, the court revoked the commitment and entered an order of protective supervision effective October 20. On February 26, 1992, before the order of protective supervision lapsed, the court, upon agreement of all parties, adjudicated both Janelle and Felicia neglected children. Janelle was committed to the custody of DCF and Felicia was permitted to return to her mother's home under the condition, inter alia, that no male be allowed in the mother's residence without DCF's advance approval. On the basis of a violation of this condition, on April 10, 1992, the trial court issued a new ex parte order of temporary custody to DCF. DCF also filed a motion to open and modify the disposition of Felicia's neglect adjudication and to have Felicia committed. This second neglect petition was filed before the order of protective supervision lapsed. The order of protective supervision was in effect at the time of the hearing before the trial court. The trial court, therefore, at all times pertinent to the resolution of issues raised in the motion to dismiss, proceeded with the knowledge that Felicia was not a committed child.[5]

[5] All parties conceded at trial that Felicia was not a committed child.

Subject matter jurisdiction is the power of the court "to hear and determine cases of the general class to which the proceedings in question belong." *Bank of Babylon* v. *Quirk,* 192 Conn. 447, 449, 472 A.2d 21 (1984). The factual basis for the respondent's motion to dismiss is that on the form[6] for petition for the termination of parental rights, in the section designated "Jurisdiction Based On," the petitioner checked the box next to the phrase "Child Committed to the Custody of the Commissioner of the Department of Children and Youth Services (Gen. Stat. § 17a-112)," rather than the box next to the phrase "Neglect Petition accompanied by Petition for Termination of Parental Rights (Coterminous Petitions) (Gen. Stat. § 17a-112)." The thrust of the respondent's argument is unclear. She seems to be arguing that, since the petitioner checked a particular box, the subject matter jurisdiction of the trial court was not invoked so as to have the power to act on a coterminous petition, but only to act on a petition concerning a child who was committed to the custody of DCF. In *In re Michael M.,* 29 Conn. App. 112, 119–20, 614 A.2d 832 (1992), this court held that a clerical defect will not deprive a court of subject matter jurisdiction if it is clear from the pleadings that the court's jurisdiction was correctly invoked. In this case, the trial court held that because the petition sought to terminate parental rights "in the best interest of the child and for the following reasons . . . . The child has been found in a prior proceeding to have been neglected or uncared for. The mother has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the life of the child."

[6] Judicial Branch form JD-JM-40 Rev. 4-91.

It was clear that the court was acting with the knowledge that the child was not committed at the time of the petition's filing.

The respondent also argues that the trial court could not have terminated her parental rights pursuant to § 17a-112 (e) unless the termination petition was accompanied by a neglect petition that shared a common basis that was anticipated at the time each was filed. She claims that the trial court improperly found that the termination petition accompanied only a neglect petition filed in 1987. The 1987 petition, the respondent argues, was based on the inability to meet Felicia's specialized needs rather than on allegations of neglect, and therefore, does not share a common ground with the termination petition. This claim must fail. The trial court properly found that it had subject matter jurisdiction pursuant to § 17a-112 (e) because "the termination petition regarding Felicia, which accompanies the earlier [1992] petition resulting in her adjudication as a neglected child, is construed as being a 'coterminous petition . . . .' " On the basis of this argument, the trial court did not lack subject matter jurisdiction.

### B

The respondent also claims that the trial court lacked subject matter jurisdiction because the petition alleged as the sole ground for termination the respondent's failure to rehabilitate. The respondent contends that, even if the neglect petition and the parental termination petition are construed as coterminous, the failure to rehabilitate is not a statutory ground for termination included in General Statutes § 45a-717, which she asserts is the statute authorizing the trial court to terminate parental rights when faced with a coterminous petition.

Coterminous petitions are authorized by General Statutes § 17a-112 (e). That section provides in part: "Any petition brought by the commissioner of children and youth services to the superior court . . . may be accompanied by a petition for termination of parental rights filed *in accordance with this section* with respect to such child . . . ." (Emphasis added.) It is clear that "this section" refers to § 17a-112 in general. That would include subsection (b) which lists "the failure to rehabilitate" as a ground for termination. General Statutes § 17a-112 (b) (2).

In addition, the petition form itself, JD-JM-40 Rev. 4-91, which is the proper vehicle for the termination of parental rights via a coterminous petition, lists the grounds on which the commissioner may seek termination. One of those listed on the form on which DCF may seek termination "as provided by . . . C.G.S. [§] 17a-112" is that "[t]he child has been found in a prior proceeding to have been neglected or uncared for. The [mother] has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, [she] could assume a responsible position in the life of the child."

We conclude then that it is clear that a coterminous petition is properly sought pursuant to General Statutes § 17a-112, and the grounds for seeking termination are provided therein. Therefore, this statutory claim fails.

C

The respondent finally argues that the court lacked subject matter jurisdiction to hear this matter because the alleged failure to rehabilitate on the part of the mother did not exist for greater than one year as DCF had indicated in its petition.[7] She contends that because

___

[7] The requirement in General Statutes § 17a-112 (b) that the grounds for termination of parental rights must have existed for not less than one year

the 1992 neglect petition was filed only three months prior to the termination petition, there was no compliance with the statute.

In accordance with General Statutes § 17a-112 (b), the trial court may terminate parental rights if it determines that the conditions for termination had been in existence "over an extended period of time, which . . . shall not be less than one year." See *In re Saba P.,* 13 Conn. App. 605, 609, 538 A.2d 711, cert. denied, 207 Conn. 811, 541 A.2d 1241 (1988). " 'Whether the grounds for termination [of parental rights] exist for not less than one year is a question of fact to be determined by the [trial] court from the facts and circumstances in any given case.' *In re Saba P.,* [supra, 610]." *In re Romance M.,* 30 Conn. App. 839, 858, 622 A.2d 1047 (1993), appeal dismissed, 229 Conn. 345, 641 A.2d 378 (1994). In fact, the court, in *Saba,* stated that the statutory year does not require a fixed starting date. "The statutory requirement is, simply that, at the time of the adjudication, statutory grounds exist for the termination of parental rights, and that those grounds must have existed for not less than one year. . . . [The statute] requires only that the ground exist for not less than one year." *In re Saba P.,* supra, 609.

In this case, Felicia had been the subject of neglect petitions for a period of five years. The trial court's decision that the ground for termination, the respondent's failed efforts to rehabilitate, existed for not less than one year was appropriate.

does not implicate the trial court's subject matter jurisdiction. Subsection (c) of the same statute allows the trial court to waive this requirement if it finds from the totality of the circumstances that such a waiver would be in the best interests of the child. The failure of a respondent to raise at the trial level a claim regarding compliance with the one year requirement, or the propriety of granting a waiver, has barred appellate review. See *In re Romance M.,* 229 Conn. 345, 352, 641 A.2d 378 (1994). If the one year requirement deprived the trial court of subject matter jurisdiction the issue could be raised at any time and would be subject to review.

## II

The respondent's remaining claims are that the trial court, in granting the termination petitions as to both children, improperly concluded that the petitioner proved by clear and convincing evidence that the respondent had failed to rehabilitate, that she denied Janelle by acts of commission or omission the care necessary for her well-being, and that it was in their best interests to terminate her parental rights.

" 'On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported.' *In re Michael M.,* [supra, 29 Conn. App. 121]; *In re Megan M.,* 24 Conn. App. 338, 342, 588 A.2d 239 (1991); *In re Davon M.,* 16 Conn. App. 693, 696, 548 A.2d 1350 (1988). We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 222, 435 A.2d 24 (1980); nor do we retry the case or pass upon the credibility of the witnesses. *In re Christine F.,* 6 Conn. App. 360, 366–67, 505 A.2d 734, cert. denied, 199 Conn. 808, 809, 508 A.2d 769, 770 (1986). Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. *State* v. *Jones,* 205 Conn. 638, 660, 534 A.2d 1199 (1987)." *In re Kezia M.,* 33 Conn. App. 12, 16–17, 632 A.2d 1122, cert. denied, 228 Conn. 915, 636 A.2d 847 (1993).

The respondent challenges the trial court's finding that she failed to rehabilitate. This ground of termination is defined as "the parents of a child who has been found . . . to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and

needs of the child, they could assume a responsible position in the life of the child." General Statutes § 17a-112 (b) (2). " 'Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." *In re Migdalia M.,* 6 Conn. App. 194, 203, 504 A.2d 532, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986). "Our Supreme Court has held that § [17a-112] (b) (2) 'requires the trial court to analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable "within a reasonable time." ' *In re Luis C.,* [210 Conn. 157, 167, 554 A.2d 722 (1989)]." *In re Michael M.,* supra, 29 Conn. App. 124. "A determination by the trial court under § [17a-112] (b) (2) that the evidence is clear and convincing that the parent has not rehabilitated herself will be disturbed only if that finding is ' "not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* [supra, 181 Conn. 221–22]." ' *In re Luis C.,* supra, 166, quoting *In re Juvenile Appeal (84-3),* [1 Conn. App. 463, 478, 473 A.2d 795, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984)]." Id., 126.

The trial court found that the respondent, over a period of five years, demonstrated poor judgment and poor supervision in caring for her young children. The respondent continually associated with men known to have abusive tendencies toward children in violation of protective supervisory orders of the trial court. When DCF confronted her with these violations, she complained that she could not control whether men came to visit. She could not control her temper, which constantly posed a danger to her children's welfare, and disobeyed DCF recommendations. In an effort to aid her in rehabilitation, DCF extended a variety of services to the respondent in the form of counseling, assigning a parent aide worker, and parental training

from a foster parent. The mother faithfully had visited her children, and had not been prevented from developing meaningful relationships with them. During the visits, the respondent, however, had demonstrated inappropriate behavior such as quarreling with Felicia, refusing to speak to Felicia, chatting with the foster grandmother rather than making an effort to interact with her daughter, name calling, and threatening not to visit if Felicia told a doctor that she had hit her. On one occasion, when the foster mother and Felicia were at a mall and unexpectedly encountered the respondent, Felicia clung to the foster mother and showed no interest in her mother. When Janelle exhibited symptoms that could have resulted only from sexual abuse, the respondent defended her husband who had been left to watch the girls.[8] While the respondent did not inflict injury on her children, she had, despite warnings, exposed them to dangerous characters and failed to protect them.

Our review of the record discloses that the trial court considered the statutory criteria of personal rehabilitation within the meaning of § 17a-112 (b) (2), and properly concluded that the petitioner had presented clear and convincing evidence that the respondent failed to rehabilitate herself as to both Felicia and Janelle as required under the statute.

The respondent contends that the petitioner failed to establish by clear and convincing proof that she had denied Janelle necessary care by reason of an act or acts of omission or commission.

"General Statutes § 17a-112 (b) (3) authorizes the termination of parental rights where 'the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control neces-

---

[8] The respondent's husband, Peter Signorino, was convicted of risk of injury and reckless endangerment and is currently incarcerated.

sary for his [or her] physical, educational, moral or emotional well-being.' This provision authorizes the termination of parental rights where specific acts of parental commission or omission have caused serious physical or emotional injury to the child. See *In re Theresa S.,* 196 Conn. 18, 25–27, 491 A.2d 355 (1985); *In re Kelly S.,* [29 Conn. App. 600, 614, 616 A.2d 1101 (1992)]; *In re Sean H.,* 24 Conn. App. 135, 144–45, 586 A.2d 1171, cert. denied, 218 Conn. 904, 588 A.2d 1078 (1991)." *In re Kezia M.,* supra, 33 Conn. App. 19.

The trial court found that Janelle was a victim of sexual abuse, and had sustained serious head injuries. Janelle received the injuries while in the respondent's care and the respondent offered no explanation consistent with those injuries. The court also found that although the respondent was not the person who inflicted serious physical injury on Janelle, she continually exposed her to the risk of serious injury by associating with dangerous men. She did not act to protect Janelle from sustaining the injuries she received, and she did not acknowledge the possibility that her husband, Peter Signorino, might have caused the injuries. These circumstances, the court held, cast grave doubt on the respondent's ability to parent. We conclude that the trial court's conclusion that this ground for termination existed as to Janelle is legally correct and factually supported.

The respondent next claims that the petitioner did not prove by clear and convincing evidence that termination is in the best interests of the children pursuant to General Statutes § 17a-112 (d).[9] The trial

___

[9] General Statutes § 17a-112 (d) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) the terms of any applicable court order

court, in its memorandum of decision, made specific findings regarding the six statutory factors necessary in the adjudicatory phase for consideration in a proceeding to terminate parental rights. See *In re Romance M.,* supra, 30 Conn. App. 847–48. The trial court found that DCF offered and provided many services to the respondent mother "from the beginning of its involvement in 1987." The respondent violated the condition of a supervisory protection order on numerous occasions by associating with men who posed a risk to her children. The trial court found that the children recognized their biological mother but did not seem to have close emotional ties with her, and seemed to be closer to their foster mothers. The trial court also found that while the respondent had accepted services and counseling, and maintained contact with her children, she had failed to disassociate herself from those individuals who posed a risk to her children, resulting in serious injury to one of them. Finally, the trial court noted that there was no evidence of anything that prevented the respondent from developing a meaningful relationship with her children.

---

entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (3) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (4) the age of the child; (5) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (6) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

The trial court considered the relevant statutory criteria and its findings were supported by clear and convincing evidence pursuant to § 17a-112 (d). Given these findings and the special needs of the children involved, the trial court held that termination of the respondent's parental rights would afford the children the opportunity to receive prompt permanent planning for their futures, a prospect that was in their best interests. We conclude that its factual findings and conclusion are supported by the evidence in the record and are not clearly erroneous. See *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra, 181 Conn. 221–22; *In re Romance M.,* supra, 30 Conn. App. 847.

The judgment is affirmed.

In this opinion the other judges concurred.