[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On November 7, 2000, the Department of Children and Families ("DCF") filed a petition for the termination of parental rights of Laurie S. and Edward W. with respect to their children Jennifer W. and Tyler W. As to each respondent-parent, the termination petition alleged that each respondent-parent failed to rehabilitate him/herself within a reasonable period of time so as to encourage the belief that either could assume the role of a responsible parent for their daughter and son. See C.G.S. § 17-112 (j)(3)(B).
The trial commenced on August 6, 2001 and concluded on August 10, 2001. From the evidence presented at the hearing and the applicable case law, the Court grants the termination of parental rights with respect to both Jennifer W. and Tyler W. as to each respondent-parent.
The Court finds the following:
Facts:
Jennifer W. was born on December 1997. At the time of her birth, respondent-mother Laurie S. was thirty-two years old and respondent-father Edward W. was forty-four years old. Jennifer W.'s parents never married. DCF has been involved with this child since January of 1998 to the present. She was a medically fragile child due to bronchial pulmonary disease accompanying a premature birth. Respondent-mother did not receive prenatal care until two months prior to her daughter's birth. As a result, Jennifer W. was hospitalized for two months after her birth. Due to developmental delays, she also needed to CT Page 16175 attend a Birth to Three program and still suffers from a bronchial disorder. While in her parents' care, Jennifer W. was admitted to the hospital on November 10, 1999 with rectal trauma that was consistent with sexual abuse. Since that time, Jennifer W. has been in foster care. In May of 2001, she was placed in a pre-adoptive home. She has established a strong and solid bond with this pre-adoptive family. The family would like her as a permanent member of their family. Jennifer W. came to her current placement with numerous behavioral problems. She was very oppositional; she would frequently throw tantrums; she had repeated nightmares; and she would act out in sexually inappropriate ways. Her pre-adoptive family has worked diligently with Jennifer W. and has made remarkable progress with her negative behaviors. It is noted that Jennifer W. regresses after visits with her biological parents in that she has increased nightmares and aggressive behavior. When respondent-mother Laurie S. visits with the child, she superficially
engages in interaction with the child; the respondent-mother does not set appropriate boundaries or protections for this child. See State's Exhibit #30 (Report of Dr. Kelly Rogers) and State's Exhibit #31 (Report of Dr. Stephen Humphrey). When respondent-father Edward W. visits with the child, he engaged in notably unusual behavior with his daughter. He was seen hovering inches from her face as he knelt in front of her to tell a story. At the conclusion of this "storytelling", Edward W. produced a chocolate/peanut butter egg wrapped in foil and asked his daughter if she wanted a "little lick"? He allowed the child to take a small bite of the candy and then proceeded to suck the contents of the egg out in front of the child. After reading another story to the child while she reclined across his thigh, he then allowed her to finish the chocolate egg. See State's Exhibit #31 (Report of Dr. Stephen Humphrey). The credible evidence establishes that Jennifer W. has no appropriate bond with respondent-father, Edward W. and while she clearly has affectionate feelings towards respondent-father, these feelings do not constitute a relationship that is consistent with a normal parent-child bond. The credible evidence establishes that Jennifer W. has bonded with her current pre-adoptive parents as her mother and father and looks to them for guidance and support.
Tyler W. was born on July 1999. At the time of his birth, respondent-mother Laurie S. was thirty-three years old and respondent-father Edward W. was forty-six years old. Tyler W.'s parents never married. DCF has been involved with this child since November of 1999 to the present. He has resided in foster care since November of 1999. His current placement is in the same pre-adoptive home as his sister. He has established a strong and solid bond with this family. The family would also like to adopt Tyler W. as a permanent member of their family. In August of 1999, when Tyler W. was approximately six weeks old, he suffered a skull fracture while in respondent-mother's care. The CT Page 16176 description of how the injury occurred that was given by the mother was not consistent with the injury that the child suffered. See State's Exhibit #35 (Report of Dr. Frederick Berrien). This incident, combined with the subsequent evidence of anal trauma seen in Jennifer W. in November of 1999, is significant in demonstrating the incredible history that has been given by the respondent-parents with regard to their children. Neither parent recognizes or accepts the severity of their children's conditions and attribute their current legal difficulties as an "overreaction" by DCF against their family. During the respondent-mother's visits, it is clear from the evidence that she demonstrated much less attention to her son. Similarly respondent-father did not set boundaries for Tyler W., and instead let the child walk on the couch. Edward W. also devoted his attention mainly to his daughter. The credible evidence establishes that Tyler W. has bonded with his current pre-adoptive parents as his mother and father and looks to them for guidance and support.
Respondent-mother Laurie S. was born on November 20, 1965. She had a chaotic upbringing due to significant substance abuse issues in her family. She began drinking alcohol at a very early age and by age thirteen was using illicit substances. She is a polysubstance abuser having used marijuana, LSD, PCP, heroin, cocaine, and prescription narcotics. Her most steady employment has been as an exotic dancer for approximately eleven years. She has been frequently homeless or vague as to her living arrangements. Her relationship with the children's father is extremely volatile leading to numerous domestic violence arrests. Her demeanor varies to extremes: she exhibits manipulative behavior, seductive behavior, suicidal behavior, and violent behavior. The evidence is clear that she has not significantly addressed the severity of her personality disorders, and instead chooses to drop out of programs before completion, leaves in-patient treatment against medical advice, and even in her most "successful" attempts at programs is noted to have violations due to her lack of compliance. Her visitation with her children has been inconsistent. She has threatened to kill the DCF worker if her parental rights are terminated. She continued throughout the pendency of the case to be arrested on new criminal charges. Respondent-mother minimizes her own failures by blaming DCF for her present "stress" and characterizing the DCF actions as "unreasonable". Court expectations were treated as "selective" by Laurie S. She did not participate fully in the counseling that was expected despite the fact that numerous referrals had been made on her behalf. It was the opinion of both Dr. Rogers and Dr. Humphrey that Laurie S.'s primary problems have been her impulsivity, her very poor judgment, her oppositional behavior, her drug use, and her tendency to blame others for her problems. Based on the credible evidence presented at the trial, the Court accepts and credits these opinions in reaching its decision with respect to the termination of CT Page 16177 respondent-mother's parental rights. The Court finds that there is a clear risk that her impulsive, oppositional functioning will continue to prolong her chaotic life style and to delay indefinitely the return of her children to her.
Respondent-father Edward W. was born March 13, 1953. Edward W. has a sporadic work history due to his chronic involvement in the criminal justice system and his severe substance abuse. In addition to his lack of employment, Edward W. does not maintain adequate housing, and instead often resides in homeless shelters or with friends. He suffers from severe mental health concerns. He and respondent-mother have an extremely volatile relationship that is marked by domestic violence. During the course of his evaluations with the court-appointed psychologists, he minimized his problems with respondent-mother. The credible evidence establishes the contrary. His conduct towards his daughter is bizarre and inappropriate. He was not conscientious in visiting his children and lapsed for long periods of time. His claim that DCF is at fault for this lapse is not credited by the court. Court expectations were also treated as "selective" by Edward W. He did not participate fully in the counseling that was expected despite the fact that numerous referrals had been made on his behalf. The credible evidence establishes that respondent-father has notably poor judgment, difficulty in controlling his anger, and is unreliable.
 Legal Analysis
Reunification Efforts:
DCF must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent." C.G.S. § 17a-112 (j). In making this effort DCF is not required to do everything possible, but rather is required to do everything reasonable to reunify the child with the parent. In re DanielC., 63 Conn. App. 339, 361 (2001). DCF should not make reunification an impossibility.
As to Jennifer W.:
The Court finds by clear and convincing evidence that DCF made reasonable efforts to reunify Jennifer W. with her parents, Laurie S. and Edward W.
Respondent-mother selectively took advantage of the DCF efforts: namely she participated in individual, family and substance abuse counseling only when she chose to do so, and during her allowed visits, when she chose to attend, detrimental setbacks manifested themselves in Jennifer W. Respondent-father made inconsistent efforts to reunify with his CT Page 16178 child. Further efforts on the part of DCF with respect to reunify Jennifer W. with respondent-father simply were not appropriate or possible.
As to Tyler W.:
The Court finds by clear and convincing evidence that DCF made reasonable efforts to reunify Tyler W. with his parents, Laurie S. and Edward W.
Respondent-mother selectively took advantage of the DCF efforts: namely she participated in individual, family and substance abuse counseling only when she chose to do so, and during her allowed visits, she clearly gave limited attention to Tyler W. as compared to his sister. Respondent-father made inconsistent efforts to reunify with his child. Further efforts on the part of DCF with respect to reunify Tyler W. with respondent-father simply were not appropriate based on the father's bizarre behavior at the visits that he chose to attend. His claims that DCF prevented his visits is found to be without merit.
Adjudicatory Findings:
As to Jennifer W.:
As to the respondent-mother, the court finds by clear and convincing evidence that Laurie S. has failed to rehabilitate to such degree as would encourage the belief, that within a reasonable time, considering the age and needs of this child, that she could assume a responsible position in Jennifer W.'s life.
The Court finds that the credible evidence establishes that Jennifer W. was neglected and uncared for and has been in the custody of DCF continuously since November of 1999, with the initial DCF involvement dating back to January of 1998 and that the respondent-mother had been provided specific steps on November 19, 1999 and March 16, 2000 to facilitate the return of this child and that she has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of this child, she could assume a responsible position (as a parent) in the life of this child. See, In re Eden F., 250 Conn. 674, 706, reargument denied,251 Conn. 924 (1999). The Court defines "`personal rehabilitation' as used in [C.G.S. § 17a-112] as . . . the restoration of a parent to his or her former constructive and useful role as a parent." In reFelicia D., 35 Conn. App. 490, 501, cert. denied, 231 Conn. 931 (1994).
The credible evidence establishes that the respondent-mother was, at CT Page 16179 best, erratic in both securing housing and employment and did not consider the impact of her choices in these areas or its effects on either of her children. Laurie S. showed poor judgment, impulsivity, and oppositional behavior. All of these characteristics were demonstrated throughout the pending matter regarding Jennifer W. In fact, despite her knowledge of the pending proceedings, she continued to abuse illicit narcotics and accumulate new criminal arrests and convictions. Respondent-mother continued to demonstrate poor judgment in failing to attend visitations with her children, failing to attend counseling sessions, getting fired from her employment and maintaining a relationship that resulted in domestic violence and the presence of illegal drugs in the home.
Based upon the Court's review of the evidence presented at trial, the Court finds that the respondent-mother had been given a reasonable amount of time for her personal rehabilitation and has failed to do so in any meaningful manner. The Court finds that respondent-mother created conditions whereby termination was sought, and mother failed to avail herself of reunification services. In re Kelly S., 29 Conn. App. 600,616-18 (1992).
As to the respondent-father, the court finds by clear and convincing evidence that Edward W. has failed to rehabilitate to such degree as would encourage the belief, that within a reasonable time, considering the age and needs of this child, that he could assume a responsible position in Jennifer W.'s life.
The Court finds that the credible evidence establishes that Jennifer W. was neglected and uncared for and has been in the custody of DCF continuously since November of 1999 and that the respondent-father had been provided specific steps on November 19, 1999 and March 16, 2000 to take to facilitate the return of this child and that he has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of this child, he could assume a responsible position (as a parent) in the life of this child. See, In re Eden F., 250 Conn. 674, 706, reargument denied, 251 Conn. 924 (1999). The Court defines "`personal rehabilitation' as used in [C.G.S. § 17a-112] as . . . the restoration of a parent to his or her former constructive and useful role as a parent." In re Felicia D., 35 Conn. App. 490, 501, cert. denied,231 Conn. 931 (1994).
The credible evidence establishes that the respondent-father was chronically involved in the criminal justice system, that he was unable to successfully address his narcotics addiction which compounded his mental health problems, and that he was sporadic in securing housing and CT Page 16180 employment. His lifestyle had a direct and negative effect on his relationship with his daughter. The credible evidence establishes that Edward W. is manipulative, unstable and puts his own needs and feelings over that of the child.
During the times respondent-father was not incarcerated, he continued to demonstrate poor judgment in failing to attend visitations with his child, failing to attend counseling sessions, and, subsequently, being arrested on new criminal charges.
Based upon the Court's review of the evidence presented at trial, the Court finds that the respondent-father had been given a reasonable amount of time for his personal rehabilitation and has failed to do so in any meaningful manner.
As to Tyler W.:
As to the respondent-mother, the court finds by clear and convincing evidence that Laurie S. has failed to rehabilitate to such degree as would encourage the belief, that within a reasonable time, considering the age and needs of this child, that she could assume a responsible position in Tyler W.'s life.
The Court finds that the credible evidence establishes that Tyler W. was neglected and uncared for and has been in the custody of DCF continuously since November of 1999 and that the respondent-mother had been provided specific steps on November 19, 1999 and March 16, 2000 to facilitate the return of this child and that she has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of this child, she could assume a responsible position (as a parent) in the life of this child. See, In re Eden F., 250 Conn. 674, 706, reargument denied,251 Conn. 924 (1999). The Court defines "`personal rehabilitation' as used in [C.G.S. § 17a-112] as . . . the restoration of a parent to his or her former constructive and useful role as a parent." In reFelicia D., 35 Conn. App. 490, 501, cert. denied, 231 Conn. 931 (1994).
The credible evidence establishes that the respondent-mother was, at best, erratic in both securing housing and employment and did not consider the impact of her choices in these areas or its effects on either of her children. Laurie S. showed poor judgment, impulsivity, and oppositional behavior. All of these characteristics were demonstrated throughout the pending matter regarding Tyler W. In fact, despite her knowledge of the pending proceedings, she continued to abuse illicit narcotics and accumulate new criminal arrests and convictions. Respondent-mother continued to demonstrate poor judgment in failing to CT Page 16181 attend visitations with her children, failing to attend counseling sessions, getting fired from her employment and maintaining a relationship that resulted in domestic violence and the presence of illegal drugs in the home.
Based upon the Court's review of the evidence presented at trial, the Court finds that the respondent-mother had been given a reasonable amount of time for her personal rehabilitation and has failed to do so in any meaningful manner. The Court finds that respondent-mother created conditions whereby termination was sought, and mother failed to avail herself of reunification services. In re Kelly S., 29 Conn. App. 600,616-18 (1992).
As to the respondent-father, the court finds by clear and convincing evidence that Edward W. has failed to rehabilitate to such degree as would encourage the belief, that within a reasonable time, considering the age and needs of this child, that he could assume a responsible position in Tyler W.'s life.
The Court finds that the credible evidence establishes that Tyler W. was neglected and uncared for and has been in the custody of DCF continuously since November of 1999 and that the respondent-father had been provided specific steps on November 19, 1999 and March 16, 2000 to take to facilitate the return of this child and that he has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of this child, he could assume a responsible position (as a parent) in the life of this child. See, In re Eden F., 250 Conn. 674, 706, reargument denied, 251 Conn. 924 (1999). The Court defines "`personal rehabilitation' as used in [C.G.S. § 17a-112] as . . . the restoration of a parent to his or her former constructive and useful role as a parent." In re Felicia D., 35 Conn. App. 490, 501, cert. denied,231 Conn. 931 (1994).
The credible evidence establishes that the respondent-father was chronically involved in the criminal justice system, that he was unable to successfully address his narcotics addiction which compounded his mental health problems, and that he was sporadic in securing housing and employment. His lifestyle had a direct and negative effect on his relationship with his son. The credible evidence establishes that Edward W. is manipulative, unstable and puts his own needs and feelings over that of the child.
During the times respondent-father was not incarcerated, he continued to demonstrate poor judgment in failing to attend visitations with his child, failing to attend counseling sessions, and, subsequently, being CT Page 16182 arrested on new criminal charges.
Based upon the Court's review of the evidence presented at trial, the Court finds that the respondent-father had been given a reasonable amount of time for his personal rehabilitation and has failed to do so in any meaningful manner.
Required Findings:
Once the court finds that the allegations of the petition have been proven by clear and convincing evidence, the court must find, also by clear and convincing evidence, that termination is in the best interests of each child. In re Roshawn R., 51 Conn. App. 44, 52 (1998). "In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors." In re Tabitha P.,39 Conn. App. 353 (1995).
The Court having considered the credible evidence presented at trial as to each individual child makes the following findings:
1. Each respondent-parent had the opportunity to engage in timely and appropriate services provided to facilitate the reunion of each child with the parent. As to the respondent-mother these services included, but were not limited to: addiction assistance, counseling and parenting groups; as to the respondent-father, these services included but were not limited to: addiction assistance, counseling and parenting groups. Each parent had an obligation to refrain from further involvement in the criminal justice system;
2. DCF made reasonable efforts to reunite each child with his! her family pursuant to the federal Child Welfare Act of 1980;
3. The terms of respondent-mother's specific steps are found in State's exhibits #40, 42, and 44. The credible evidence shows that mother did not fulfill these requirements and continues to struggle with the same issues currently. The terms of respondent-father's specific steps are found in State's exhibits #39, 41, and 43. The credible evidence shows that respondent-father did not fulfill these requirements even minimally;
4. Each child has developed feelings and strong emotional ties toward their pre-adoptive parents. Each child looks to this family for care, comfort and support;
5. Jennifer W. is four years old; Tyler W. is two years old;
6. Respondent-mother has not adjusted her circumstances to make it in CT Page 16183 the best interest of either child to return to her home in the foreseeable future. The Court finds that her contact was sporadic and superficial. Respondent-father had minimal and often inappropriate contact with his children;
7. The respondent-parents have not been prevented from maintaining a meaningful relationship with either child by unreasonable acts of the child, the other parent, or any other person or by economic circumstances.
These seven statutory factors are guidelines for the court and not prerequisites that must be proven before termination of parental rights is ordered. In re Quanitra M., 60 Conn. 96, 104, cert. denied, 255 Conn. 903
(2000). DCF is not required to prove by clear and convincing evidence each of the seven factors prior to the court's finding that termination of parental rights is in the child's best interest. Id., 105. This Court determines that based on the facts and the evidence presented that each of these factors has in fact been established by clear and convincing evidence as to each child.
Disposition:
A hearing for a contested termination of parental rights has two phases: (1) Adjudication, in which the court determines whether a statutory ground for termination exists by clear and convincing evidence, and (2) Dispositional, in which the court determines whether termination is in the best interests of the child. In re Kasheema L.,56 Conn. App. 484, 487, cert. denied, 252 Conn. 945 (2000). Evidence on adjudication is limited to events preceding the filing of the petition or the latest amendment. Evidence on disposition includes events occurring through the final hearing. In re Tabitha P., 39 Conn. App. 353, 367
(1995).
The Court finds that the grounds for termination alleged against each respondent-parent have been proven by clear and convincing evidence. The Court has made the seven written findings required by law, all of which weigh in favor of termination being in each individual child's best interest. "The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of its environment." In re Shyina B., 58 Conn. App. 159, 167
(2000).
The Court concludes from clear and convincing evidence that it is in the best interest of Jennifer W. to have permanency and stability in her life. Accordingly, it is in her best interests that her parents' rights to her be terminated. CT Page 16184
The Court therefore orders that a termination of parental rights enter with respect to Laurie S. and Edward W. The Court appoints the Commissioner of the Department of Children and Families as the statutory parent. The Court further orders a permanency and review plan to be filed for Jennifer W. in accordance with State and Federal law.
The Court concludes from clear and convincing evidence that it is in the best interest of Tyler W. to have permanency and stability in his life. Accordingly, it is in his best interests that his parents' rights to him be terminated.
The Court therefore orders that a termination of parental rights enter with respect to Laurie S. and Edward W. The Court appoints the Commissioner of the Department of Children and Families as the statutory parent. The Court further orders a permanency and review plan to be filed for Tyler W. in accordance with State and Federal law.
Ordered this 7th day of December, 2001:
JOAN K. ALEXANDER, JUDGE CHILD PROTECTION SESSION