# IN RE COBY C.*
## (AC 28530)

McLachlan, Lavine and Mihalakos, Js.

Argued December 3, 2007—officially released April 29, 2008

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Michael F. Miller*, for the appellant (respondent mother).

*Joaquin L. Madry*, assistant attorney general, with whom were *Susan T. Pearlman*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, for the appellee (petitioner).

*Opinion*

MIHALAKOS, J. The respondent mother appeals from the judgment of the trial court terminating her parental rights with respect to her minor child, Coby.[1] On appeal, the respondent claims that (1) the court improperly concluded that the petitioner, the commissioner of children and families (commissioner), proved by clear and convincing evidence that she failed to achieve sufficient personal rehabilitation to allow her to assume a responsible position in her child's life and (2) the court's written findings on whether termination of her parental rights was in the child's best interest were legally insufficient to satisfy the requirements of General Statutes § 17a-112 (k).[2] We affirm the judgment of the trial court.

[1] The parental rights of the child's father were also terminated at the same hearing. That portion of the court's judgment is not part of this appeal. We therefore refer to the mother in this opinion as the respondent.

[2] General Statutes § 17a-112 (k) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to

The relevant facts are as follows. The respondent was born on August 14, 1982, to parents who fought often. The respondent's parents married when she was two years old and divorced when she was four years old. After her parents divorced, she lived with her mother and did not see her father again for about eleven years. The respondent's mother was very strict with her, which caused the respondent to become defiant. At age fifteen, she was admitted to Pond House, a partial hospitalization program for children at Lawrence and Memorial Hospital in New London. She was discharged shortly thereafter due to her mother's refusal to visit with her and cooperate in a family therapy program. Before her discharge, the respondent was diagnosed with bipolar disorder and was prescribed medication. After her discharge, the respondent was sent by her mother to live with her father in Florida. While in Florida, she became pregnant with Coby. The respondent reported to employees of the department of children and families (department) that she was unaware she was pregnant until twenty-one weeks into the pregnancy. Coby was born prematurely at twenty-eight weeks and stayed in a hospital for sixty-two days. The

which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

hospital made a referral concerning the respondent and Coby to Florida child protection services because of the respondent's young age and her limited parenting skills.

The respondent and Coby moved to Connecticut in August, 2000, and lived with the respondent's maternal grandparents for about thirteen months, after which the respondent obtained her own apartment. Shortly thereafter, the respondent met Michael H., and they married on November 11, 2001. In June, 2002, Michael H. ended their relationship and moved out. During a September, 2006 evaluation with Community Health Center, the respondent disclosed that Michael H. had been physically abusive toward her during their relationship.

In October, 2002, the department received a referral concerning the respondent and Coby from the New London housing authority. The referral indicated, among other things, that an inspection of the respondent's residence revealed that the premises were filthy and that numerous exotic and domestic pets were being sheltered in the home. The housing authority also reported that the family was being evicted for nonpayment of rent and serious unsanitary conditions in the home. The housing authority informed the department that there were dead animals and animal feces in the apartment, including animal feces near the crib.

The department investigated and substantiated the claims of physical neglect against the respondent. The respondent told the department that the conditions of the home were not a priority to her. Continued visits to the home by the department showed no improvement in the conditions. Specifically, on November 8 and 25, 2002, the department visited the home and found a foul order emanating from the apartment and garbage covering the apartment floor. It found Coby to be filthy and wearing a diaper that had not been changed for a

substantial period of time. The respondent thereafter refused to cooperate with the department's home visits or to remain in contact with the department.

On December 16, 2002, a visit to the respondent's residence by the department and the Groton police department revealed deplorable conditions, which rendered the premises unsanitary and unsafe for Coby. In particular, there were dog feces on the floor near the crib as well as in other locations throughout the home, cigarette butts within Coby's reach, insufficient food in the home to make a meal and an open jar of peanut butter into which Coby had been sticking his hand and eating while the department was visiting the home. As a result of this visit, the commissioner executed a ninety-six hour hold on Coby. See General Statutes § 17a-101g.

On December 19, 2002, the commissioner filed a neglect petition and a motion for an order of temporary custody due to inadequate shelter, deplorable home conditions and lack of appropriate supervision for Coby. On January 3, 2003, the motion was granted by the court on a finding that Coby was in immediate danger in his surroundings and that removal was necessary to ensure his safety. On April 23, 2003, the court adjudicated Coby neglected and committed him to the care and custody of the commissioner until further order from the court. At that time, the court found that the department had made reasonable efforts to prevent or eliminate the need to remove Coby from his home and further issued specific steps for the respondent to complete in order to facilitate the return of Coby to her.[3]

---

[3] The specific steps were: (1) keep all appointments set by or with the department and cooperate with department home visits, announced or unannounced, and visits by the child's court-appointed attorney or guardian ad litem; (2) keep the child's whereabouts and your own whereabouts known to the department, your attorney and the attorney for the child; (3) participate in counseling and make progress toward parenting and individual treatment goals; (4) accept and cooperate with in-home support services referred by the department if appropriate; (5) submit to substance abuse assessment

The court also ordered psychological and interactional evaluations of the respondent.

On January 21, 2005, the commissioner filed a petition for termination of parental rights. The petition alleged among other things that (1) the department had made reasonable efforts to reunify the child with the respondent and (2) the respondent was unable or unwilling to benefit from reunification efforts. A contested hearing was held, and, on January 17, 2007, the court granted the commissioner's petition and terminated the respondent's parental rights on the grounds alleged in the petition. It is from this judgment that the respondent appeals.

I

The respondent's first claim is that the court improperly found that the commissioner proved by clear and convincing evidence that she had failed to achieve the degree of rehabilitation required to avoid a termination of her parental rights. Specifically, the respondent claims that substantial compliance with four specific

and follow recommendations regarding treatment, including inpatient treatment if necessary, aftercare and relapse prevention; (6) submit to random drug testing, with the time and method of the testing in the discretion of the department; (7) submit to recommended service providers for parenting, individual and family counseling, in-home support services and substance abuse assessment and treatment; (8) cooperate with court-ordered evaluations or testing; (9) sign releases authorizing the department to communicate with service providers to monitor attendance, cooperation and progress toward identified goals and for use in future proceedings before the court; (10) secure and maintain adequate housing and legal income; (11) no substance abuse; (12) no involvement or further involvement with the criminal justice system, and cooperate with the office of adult probation or parole office and comply with conditions of probation or parole; (13) consistently and timely meet and address the child's psychological, educational, medical or emotional needs, including, but not limited to, keeping the child's appointments with his medical, psychological, psychiatric or educational providers; (14) immediately advise the department of any changes in the composition of the household to ensure that the change does not compromise the health and safety of the child; (15) visit the child as often as the department permits.

steps ordered by the court and her full compliance with twelve other specific steps demonstrates that she achieved sufficient personal rehabilitation to allow her to assume a responsible position in her son's life.[4] We disagree.

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Citation omitted; internal quotation marks omitted.) *In re Sheena I.*, 63 Conn. App. 713, 720–21, 778 A.2d 997 (2001).

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *In re Gary B.*, 66 Conn. App. 286, 289, 784 A.2d 412 (2001). "A determination by the trial court . . . that the evidence is clear and convincing that the parent has not rehabilitated herself will be disturbed only if that finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Internal quotation marks omitted.)

---

[1] The respondent claims that she substantially complied with four specific steps, fully complied with twelve specific steps and that the court found one specific step to be inapplicable. Our review of the record reveals that the court ordered only fifteen specific steps. See footnote 3.

*In re Felicia D.*, 35 Conn. App. 490, 500, 646 A.2d 862, cert. denied, 231 Conn. 931, 649 A.2d 253 (1994).

"Clear and convincing proof is a demanding standard denot[ing] a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) *Chernick* v. *Johnston*, 100 Conn. App. 276, 280, 917 A.2d 1042, cert. denied, 282 Conn. 919, 925 A.2d 1101 (2007).

"A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. In applying the clearly erroneous standard to the findings of a trial court, we keep constantly in mind that our function is not to decide factual issues de novo. Our authority, when reviewing the findings of a judge, is circumscribed by the deference we must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence. . . . The question for this court . . . is not whether it would have made the findings the trial court did, but whether in view of the evidence and pleadings in the whole record it is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *In re Ebony H.*, 68 Conn. App. 342, 348–49 n.4, 789 A.2d 1158 (2002).

In the matter before us, the issue is one of personal rehabilitation by the respondent. General Statutes

§ 17a-112 (j) provides in relevant part that "[t]he Superior Court . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that . . . (B) the child . . . has been found by the Superior Court . . . to have been neglected or uncared for in a prior proceeding . . . and [the parent] has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

"Personal rehabilitation . . . refers to the restoration of a parent to his or her former constructive and useful role as a parent [and] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . The statute does not require [a parent] to prove precisely when she will be able to assume a responsible position in her child's life. Nor does it require her to prove that she will be able to assume full responsibility for her child, unaided by available support systems. It requires the court to find, by clear and convincing evidence, that the level of rehabilitation she has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date she can assume a responsible position in her child's life." (Citations omitted; internal quotation marks omitted.) *In re Eden F.*, 250 Conn. 674, 706, 741 A.2d 873, reargument denied, 251 Conn. 924, 742 A.2d 364 (1999).

Coby was adjudicated a neglected child and was committed to the custody of the commissioner. The court, pursuant to General Statutes § 46b-129 (j), ordered specific steps that the respondent must take in order to facilitate the return of Coby to her. See footnote 3. At the termination hearing, the court reviewed the respondent's compliance with the fifteen specific steps it had

ordered. The court found by clear and convincing evidence that the respondent had complied with ten steps, failed to comply fully with four steps and found one step to be inapplicable.[5] In regard to the four steps the respondent failed to complete, the court found that the respondent, prior to and after the child's commitment, failed to comply with the requirements set by or with the department, failed to participate fully in parenting and individual counseling, was discharged unsuccessfully from Integrated Behavioral Health[6] due to noncompliance with treatment, failed to maintain stable housing or stable employment and has lived a transient existence, has been unable to keep up with her rental payment and has completed virtually none of her various referrals for counseling in a timely manner. In summary, the court found that the respondent has not been available to take part effectively in her son's life due to mental health issues, gross parenting defects, poor judgment, residential instability and failure to benefit from counseling. On the basis of clear and convincing evidence, the court found that the respondent has failed to achieve rehabilitation pursuant to § 17a-112 and that it is not foreseeable that the respondent is capable of achieving rehabilitation within a reasonable time.

The respondent argues that she fully complied with twelve of the fifteen steps ordered by the court. She further argues that she substantially complied with the other steps and that her substantial compliance with

[5] The court found inapplicable the specific step requiring the respondent to "consistently and timely meet and address the child's psychological, educational, medical or emotional needs, including, but not limited to, keeping the child's appointments with his medical, psychological, psychiatric or educational providers" because Coby has remained in the department's care and custody since December 16, 2002.

[6] The department referred the respondent to Integrated Behavioral Health for individual counseling, weekly therapy sessions and medication management.

these steps fulfills the compliance mandate. Accordingly, the respondent believes that the court's conclusion that rehabilitation has not been achieved and would not be achieved in a reasonable time is clearly erroneous.

As we stated in the standard of review, we will not overturn a court's determination that the evidence is clear and convincing unless the finding is not supported by the evidence and is clearly erroneous in light of the evidence in the whole record. *In re Felicia D.*, supra, 35 Conn. App. 500. In a termination of parental rights case, the court is the trier of fact. "We defer to the trier of fact's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. The trier is the judge of the credibility of all the witnesses and the weight to be given their testimony, and may accept part, all or none of the testimony. . . . Where, as here, the record reveals that the trial court's ultimate conclusions are supported by clear and convincing evidence, we will not reach an opposite conclusion on the basis of any one segment of the many factors considered in a termination proceeding." (Internal quotation marks omitted.) *In re Victoria B.*, 79 Conn. App. 245, 262–63, 829 A.2d 855 (2003).

The court's memorandum of decision reflects a careful and extensive review of the evidence on which it relied in the adjudicatory phase of the termination proceeding. The court found, on the basis of clear and convincing evidence, that the respondent had failed to comply fully with four specific steps.[7] The court's

[7] Specifically, the court found that the respondent failed to: (1) keep all appointments set by or with the department and cooperate with department home visits, announced or unannounced, and visits by the child's court-appointed attorney or guardian ad litem; (3) participate in counseling and make progress toward parenting and individual treatment goals; (7) submit to recommended service providers for parenting, individual and family counseling, in-home support services and substance abuse assessment and treatment; and (10) secure and maintain adequate housing and legal income.

memorandum of decision credits the respondent for her attempts to comply fully with the specific steps but, nevertheless, concludes that she has failed to achieve personal rehabilitation and that she is incapable of providing a safe and nurturing environment for Coby. Although there is no clear directive as to what constitutes "compliance" with court-ordered steps, it is clear that the failure to comply with specific steps typically weighs heavily in termination proceedings. *In re Devon B.*, 264 Conn. 572, 584, 825 A.2d 127 (2003). The respondent's claim that her "substantial compliance" with those four steps fulfills the compliance mandate is unavailing. Her claim merely places a positive label on the court's negative findings without altering the substance of those findings.

Whether the respondent's shortcomings are deemed substantial compliance or noncompliance, the evidence in the record as a whole supports the court's conclusion that the respondent has failed to achieve rehabilitation pursuant to § 17a-112 and that it is not foreseeable that she is capable of rehabilitation within a reasonable time. We conclude, therefore, that the court's determination that the respondent's parental rights should be terminated was not clearly erroneous.

II

The respondent's next claim is that the court's written findings were legally insufficient to satisfy the requirements of § 17a-112 (k). Specifically, she claims that the written findings contain no express finding regarding Coby's disruption from his preadoptive placement and, therefore, render clearly erroneous the court's ultimate conclusion that termination of the respondent's parental rights was in Coby's best interest. We decline to review this claim.

Having found that a statutory ground for termination exists in the adjudicatory phase of the hearing to terminate parental rights, the court then proceeds to the

dispositional phase and decides whether termination is in the best interest of the child. See *In re Tabitha P.*, 39 Conn. App. 353, 360, 664 A.2d 1168 (1995). "In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the parents' parental rights is not in the best interests of the child. In arriving at that decision, the court is mandated to consider and make written findings regarding seven factors delineated in General Statutes [§ 17a-112 (k)]." *In re Denzel A.*, 53 Conn. App. 827, 833, 733 A.2d 298 (1999).

The respondent does not allege that the court's written findings are deficient with regard to all seven statutory factors. The respondent's claim is limited to the fourth statutory factor and, more specifically, to that portion of the fourth factor mandating the court to make written findings regarding "any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties . . . ." General Statutes § 17a-112 (k) (4). The respondent asserts that the court was required to make a finding concerning Coby's emotional ties to his preadoptive foster family and that absent such a written finding, the court's decision was clearly erroneous.

At the outset, we note our agreement with the respondent that a court may, in certain instances, be required to make written findings concerning a child's emotional ties to his preadoptive family. In particular, such a finding is required when a child has developed significant emotional ties to his preadoptive family and that family has exercised physical care, custody or control of the child for at least one year. See General Statutes § 17a-112 (k) (4). We further agree with the respondent that no such written finding was made in this case. Contrary to the claims in the respondent's brief, however, the

absence of a written finding regarding Coby's preadoptive foster family does not require a conclusion that the court made an unwarranted departure from the requirements of § 17a-112 (k) (4).

The court is not required to make written findings in regard to the child's emotional ties to all persons. Section 17a-112 (k) (4) explicitly requires a written finding regarding the child's emotional ties only as to those individuals who have "exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties . . . ." General Statutes § 17a-112 (k) (4). The record before us, however, is inadequate to determine whether the court was required to make a written finding regarding Coby's emotional ties to his preadoptive family. Likewise, the record does not reveal the court's basis for its omission of such a written finding.[8]

It is not our function to speculate as to why the court failed to make a written finding regarding Coby's emotional ties to his preadoptive foster family. Whatever the reason for the court's omission, the respondent failed to raise this issue with the trial court. Accordingly, the trial court, in its memorandum of decision, did not address Coby's emotional ties to his preadoptive family. The respondent also failed to file a motion for articulation with this court to rectify this omission.[9] See Practice Book § 66-5.

[8] The court did make a finding that on January 3, 2007, Coby was removed from his foster home, due to his behavior, and was placed in the Waterford Country School safe home.

[9] "It is . . . the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter." (Internal quotation marks omitted.) *Grimm* v. *Grimm*, 276 Conn. 377, 388, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006). "[A]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . An articulation may be necessary where the trial court fails completely to state any basis for its decision . . . or where the basis, although stated, is unclear.

Under Practice Book § 60-5, this court "shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . ." Although we recognize that a mother has a fundamental constitutional right to retain her relationship with her child that can be severed only in strict compliance with applicable statutory standards, "we have regularly observed that the rule of [Practice Book] § 4185 [now § 60-5] applies to constitutional claims." (Internal quotation marks omitted.) *In re Romance M.*, 229 Conn. 345, 352, 641 A.2d 378 (1994). "[O]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. . . . Such exceptional circumstances may occur where a new and unforeseen constitutional right has arisen between the time of trial and appeal or where the record supports a claim that a litigant has been deprived of a fundamental constitutional right and a fair trial. . . . An exception may also be made where consideration of the question is in the interest of public welfare or of justice between the parties." (Internal quotation marks omitted.) Id., 352–53. In the present case, the respondent has referred us to no such exceptional circumstances. Accordingly, we decline to review the merits of this claim.

The judgment is affirmed.

In this opinion the other judges concurred.

---

. . . The purpose of an articulation is to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Citations omitted; internal quotation marks omitted.) *Fantasia* v. *Milford Fastening Systems*, 86 Conn. App. 270, 283, 860 A.2d 779 (2004), cert. denied, 272 Conn. 919, 866 A.2d 1286 (2005).