[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On July 3, 2000, the Department of Children and Families ("DCF") filed a petition for the termination of parental rights of Solmaria V. and Manuel R. with respect to their children, Janer R., Thelmary R., and Kenneth R. On the same date, DCF filed a petition for the termination of parental rights of Solmaria V. and Jose M., Sr. a.k.a. Edwin M. B. (deceased) with respect to their son, Jose M. On the same date, DCF filed a petition for the termination of parental rights of Solmaria V. and Jose R. with respect to their son, Henry R. As to the respondent-mother, the CT Page 2340 termination petition alleged that Solmaria V. failed to rehabilitate herself within a reasonable period of time so as to encourage the belief that she could assume the role of a responsible parent for her sons or her daughter. See C.G.S. § 17a-112 (j)(3)(B). As to the respondent-father Manuel R., the termination petition alleged that he abandoned his minor children, that he failed to rehabilitate himself within a reasonable period of time so as to encourage the belief that he could assume the role of a responsible parent for his children, and that there existed no ongoing parent-child relationship between them. See C.G.S. §§ 17a-112 (j)(3)(A), (B) and (D). The court (Esposito, J.) entered a default judgment against respondent-father Manuel R. on January 8, 2001. Respondent-father, Jose R. entered a consent to the termination of his parental rights on October 24, 2001 before the court (Conway, J.).
The trial commenced on October 25, 2001 and concluded on November 2, 2001. From the evidence presented at the hearing and the applicable case law, the Court grants the termination of parental rights with respect to Janer R., Thelmary R., Kenneth R., Jose M., and Henry R. as to each respondent-parent.
The Court finds the following:
Facts:
Janer R. was born on October 1987. At the time of his birth, respondent-mother Solmaria V. was twenty-nine years old and respondent-father Manuel R. was forty years old. DCF has been involved with this child and his family since February of 1994 to the present. He has resided in ten foster care homes during his placement with DCF. He has been in his current foster home placement for over two years. He has established a strong and solid bond with this foster care family. The foster care family would like Janer R. as a permanent member of their family. Janer R. came to his current foster family with many behavioral problems. In June of 1996, Janer R. had his mouth taped shut and was sexually assaulted by a man while he was living in respondent-mother's home. His brother, Kenneth R. also had his mouth taped shut and witnessed the assault of his brother. Respondent-mother was home at the time of the incident, but claimed to be unaware of this occurrence until informed by her children. In addition to this sexual abuse, Janer R. was also physically abused by respondent-mother's male companions. When DCF took custody of these five children, Janer R. had been left alone by the respondent-mother to care for all of his siblings. When respondent-mother was located and arrested for leaving her children without adult supervision, she told Janer R. that the children being taken away by DCF and separated from each other was "his fault". As a result of his very CT Page 2341 difficult upbringing, Janer R. is an easily stressed child. However, since being placed in the care of his current foster family, he has made marked improvements. His foster-mother, Maria C., has devoted exceptional time and attention to this child and has motivated and guided Janer R. in his progress. Janer R. has little positive memories of living with respondent-mother. He has little to no recollection of respondent-father Manuel R. The credible evidence establishes that Janer R. has no bond with respondent-father Manuel RI and while he has affectionate feelings towards respondent-mother Solmaria V. these feelings are exceptionally conflicted and do not constitute a relationship that is consistent with a healthy parent-child bond. The credible evidence establishes that Janer R. is bonded with his current foster parents as his mother and father and looks to them for guidance and support.
Thelmary R. was born on March 1989. At the time of her birth, respondent-mother Solmaria V. was thirty years old and respondent-father Manuel R. was forty-one years old. DCF has been involved with this child since February of 1994 to the present. She has resided in one foster care home since her placement in November of 1997. She has made significant progress in her current home and has established a strong and solid bond with this foster care family. The foster care family would like to adopt Thelmary R. When Thelmary R. arrived at her current foster home she was a very sad child who frequently cried and wet her bed. In a separate sexual assault incident from her brother, Thelmary R. had been sprayed in the face with mace and raped while living in respondent-mother's home in June of 1996 despite the fact that her mother was home at the time. Again, the respondent-mother claimed to have no knowledge of the incident until informed by her children. Under the guidance of her foster family, Thelmary R. has progressed remarkably. Thelmary R. is adamant that she does not want to return to respondent-mother's home. Thelmary R. displays clearly affectionate feelings towards her foster family. As to her feelings towards Solmaria V., the credible evidence establishes that these feelings are not consistent with a healthy mother-daughter bond. Thelmary R. does not have any parent-child bond with respondent-father Manuel R. The credible evidence establishes that Thelmary R. is bonded with her foster parents as her mother and father and looks to them for guidance and support.
Kenneth R. was born on August 1990. At the time of his birth, respondent-mother Solmaria V. was thirty-one years old and respondent-father Manuel R. was forty-two years old. DCF has been involved with this child since February of 1994 to the present. He has resided in four different foster care homes since his placement in November of 1997. He is currently residing at the Curtis House at the Rushford Treatment facility due to his exceptionally destructive behavior. Kenneth R. has sexually abused other younger children in his CT Page 2342 foster home placements and has displayed fire-setting tendencies. At school, he has threatened to stab the school nurse. In June of 1996, Kenneth R. had been restrained with tape and was present when his brother, Janer R., was sexually assaulted at respondent-mother's home. As to his feelings towards Solmaria V., the credible evidence establishes that his feelings do not constitute a relationship that is consistent with a healthy mother-son bond. Kenneth R. does not have any parent-child bond with respondent-father Manuel R. The credible evidence establishes that Kenneth R. is a deeply disturbed child who needs extensive therapeutic treatment.
Jose M. was born on June 1992. At the time of his birth, respondent-mother Solmaria V. was thirty-three years old and respondent-father Jose M., Sr. a.k.a. Edwin M. B. was forty-two years old. DCF has been involved with this child since February of 1994 to the present. He has resided in one foster care home since his placement in November of 1997. He has made significant progress in his current home and has established a strong and solid bond with this foster care family. The foster care family would like to adopt Jose M. When Jose M. arrived at his current foster home he was a skinny and unkempt child. Under the guidance of his foster family, Jose M. has progressed remarkably. Jose M. displays true and affectionate feelings towards his foster family. As to his feelings towards Solmaria V., the credible evidence establishes that Jose M. is conflicted in those feelings; the court finds that his feelings towards respondent-mother do not constitute a relationship that is consistent with a healthy mother-son bond. Jose M. does not have any bond with Jose M., Sr. a.k.a. Edwin M. B. as he has been deceased since two months after Jose M.'s birth and was married to another woman at the time. The credible evidence establishes that Jose M. is bonded with his foster family and looks to them for guidance and support.
Henry R. was born on May 1994. At the time of his birth, respondent-mother Solmaria V. was thirty-five years old and respondent-father Jose R. was thirty-two years old. DCF has been involved with this child since February of 1994 to the present. He has resided in five foster care homes since his placement in November of 1997. He has been in his current home since May of 2001. At this last foster home, Henry R. has made significant progress and has established a strong and solid bond with this foster care family. The foster care family would like to adopt Henry R. When Henry R. arrived at his current foster home he was a very depressed child with little self-confidence. He frequently wet his bed and experienced nightmares. Under the guidance of this foster family, Henry R. has progressed remarkably. He has advanced in his schooling and is more confident and happy. Henry R. clearly displays affectionate feelings towards his foster family. As to his feelings CT Page 2343 towards Solmaria V., the credible evidence establishes that his feelings do not constitute a relationship that is consistent with a healthy mother-son bond. Henry R. does not have any father-son bond with respondent-father Jose R. and instead refers to him only by respondent-father's nickname, "Chamico". The credible evidence establishes that Henry R. is bonded with his foster parents as his mother and father and looks to them for guidance and support.
Respondent-mother Solmaria V. was born on August 12, 1958. At the age of sixteen, she ran away with her boyfriend. She left this boyfriend after three years and became involved with respondent-father Manuel R. Manuel R. was a heavy drinker and was physically violent towards her. She had a total of our children with respondent-father Manuel R. Solmaria V. left him after they had lived together for twelve years. Respondent-father Manuel R. has not sought or remained in any type of contact with his children, Janer R., Thelmary R., and Kenneth R. After leaving respondent-father Manuel R., Solmaria V. became involved with Jose M., Sr. a.k.a. Edwin M. B. He was married to another woman at the time. Two months after Jose M. was born, Jose M., Sr. a.k.a. Edwin M. B. died of a heart attack. Solmaria V. then became involved with respondent-father Jose R. Jose R. has an extensive criminal history. He was also a severe alcoholic and physically abusive towards respondent-mother as well as the children. It was during this relationship that she gave birth to her final child, Henry R.
Respondent-mother Solmaria V. has a minimal work history. Her housing situation has been a continuous problem for Solmaria V; she stays with relatives and friends randomly. Her most significant detriment in reuniting with her children, however, is her chronic denial of her problems. She has a clearly documented substance abuse history: she has tested positive for cocaine as recently as February of 2001, yet has never successfully engaged in substance abuse treatment. She denies the need for domestic violence counseling despite male companions being arrested for assaultive behavior towards her. She is erratic in her scheduled visits with her children and demonstrates an inability to manage or set limits for the children when she is with them. The credible evidence establishes that Solmaria V. has very poor judgment and has a significant drug use history. The Court finds there is a clear risk that her chaotic life style will delay indefinitely the return of her children to her. She does not give her children the concern and protection that a parent naturally demonstrates towards a child. Rather the credible evidence establishes that she needs her children to demonstrate to her
that she is loved by them.
Little information is known about respondent-father Manuel R. He and respondent-mother stopped living with each other in 1991. Since that CT Page 2344 time, Manuel R. has demonstrated a complete lack of interest in his children Janer R., Thelmary R., and Kenneth R. There are no recorded visits with the children. He has not participated in the neglect or termination proceedings with respect to his children despite numerous publication and search efforts. He has not supported these children physically, emotionally, or financially. According to the respondent-mother. Manuel R. is a significant abuser of alcohol and is physically violent. The Court finds that the credible evidence establishes that Manuel R. has no relationship with his children.
Respondent-father Jose M., Sr. a.k.a. Edwin M.B. is deceased. His son Jose M. is a result of a very short term affair with respondent-mother.
Respondent-father Jose R. was born on December 4, 1961. He has a significant criminal history as well as a significant substance abuse problem. He is reported to have given beer to his infant son Henry R. in the child's bottle. On October 24, 2001, Jose R. voluntarily consented to the termination of his parental rights with respect to Henry R.
 Legal Analysis
Reunification Efforts:
DCF must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent." C.G.S. § 17a-112 (j). In making this effort DCF is not required to do everything possible, but rather is required to do everything reasonable to reunify the child with the parent. In re DanielC., 63 Conn. App. 339, 361 (2001). DCF should not make reunification an impossibility.
As to Janer R.:
The Court finds by clear and convincing evidence that DCF made reasonable efforts to reunify Janer R. with his parents, Solmaria V. and Manuel R.
Respondent-mother selectively took advantage of the DCF efforts: namely she participated sporadically in substance abuse counseling and denied the need for domestic violence counseling. During her allowed visits, when she chose to attend, detrimental setbacks manifested themselves in Janer R. in his increased display of behavioral problems.
Respondent-father made no effort to reunify with his child. Further efforts on the part of DCF with respect to reunify Janer R. with respondent-father simply were not appropriate or possible. CT Page 2345
As to Thelmary R.:
The Court finds by clear and convincing evidence that DCF made reasonable efforts to reunify Thelmary R. with her parents, Solmaria V. and Manuel R.
Respondent-mother selectively took advantage of the DCF efforts: namely she participated sporadically in substance abuse counseling and denied the need for domestic violence counseling. During her allowed visits, when she chose to attend, detrimental setbacks manifested themselves in Thelmary R. in her display of increased uneasiness when returning to her foster home.
Respondent-father made no effort to reunify with his child. Further efforts on the part of DCF with respect to reunify Thelmary R. with respondent-father simply were not appropriate or possible.
As to Kenneth R.:
The Court finds by clear and convincing evidence that DCF made reasonable efforts to reunify Kenneth R. with his parents, Solmaria V. and Manuel R.
Respondent-mother selectively took advantage of the DCF efforts: namely she participated sporadically in substance abuse counseling and denied the need for domestic violence counseling. During allowed visits, when she chose to attend, detrimental setbacks manifested themselves in Kenneth R. Minimal limits were set by Solmaria V. with respect to his behavior and he was regularly out of control during these visits.
Respondent-father made no effort to reunify with his child. Further efforts on the part of DCF with respect to reunify Kenneth R. with respondent-father simply were not appropriate or possible.
As to Jose M.:
The Court finds by clear and convincing evidence that DCF made reasonable efforts to reunify Jose M. with his surviving parent, Solmaria V.
Respondent-mother selectively took advantage of the DCF efforts: namely she participated sporadically in substance abuse counseling and denied the need for domestic violence counseling. During allowed visits, when she chose to attend, detrimental setbacks manifested themselves in Jose M. in that he left the visits confused and unsettled. CT Page 2346
As to Henry R:
The Court finds by clear and convincing evidence that DCF made reasonable efforts to reunify Henry R. with his parents, Solmaria V. and Jose R.
Respondent-mother selectively took advantage of the DCF efforts: namely she participated sporadically in substance abuse counseling and denied the need for domestic violence counseling. During allowed visits, when she chose to attend, detrimental setbacks manifested themselves in Henry R. Minimal limits were set by Solmaria V. in that she did not establish appropriate boundaries for his behavior.
Respondent-father made little effort to reunify with his child. Further efforts on the part of DCF with respect to reunify Henry R. with respondent-father simply were not appropriate or possible.
Adjudicatory Findings:
As to Janer R., Thelmary R., and Kenneth R.:
As to the respondent-father Manuel R., the Court finds by clear and convincing evidence that he abandoned his minor children and that there existed no ongoing parent-child relationship between them. The Court makes no adjudicatory finding with respect to the allegation that he failed to rehabilitate himself within a reasonable period of time so as to encourage the belief that he could assume the role of a responsible parent for his children.
The court finds by clear and convincing evidence that respondent-father Manuel R. abandoned his minor children in that he failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of these children. The Court's finding focuses on the respondent-father's conduct. While his lack of interest in these children is not the sole criterion in determining abandonment, the Court finds that Manuel R. made no attempt to achieve contact with his children either through telephone calls, cards and gifts, or any level of financial support. Respondent-father has not demonstrated any concern or responsibility for the welfare of these children. Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. In re Roshawn R.,51 Conn. App. 44, 52 (1998).
As to the second ground alleged by the State against respondent-father CT Page 2347 Manuel R., the court finds by clear and convincing evidence that he has no ongoing parental relationship with these children and that there is insufficient time to establish one. The credible evidence establishes that none of these children recognize Manuel R. as their father. Respondent-father has afforded these children no time or attention for many years. The Court finds that it would be detrimental to the children's best interest to allow time for such a relationship to develop. In re John G., 56 Conn. App. 12, 22 (1999). Consideration of a child's feelings and present memories of the natural parent is of paramount importance in determining whether a parent-child relationship exists as well as whether the parent created the conditions under which the petition for termination was filed. In weighing this consideration, the clear and convincing evidence establishes that the State has sustained its burden of proof in establishing no ongoing relationship between respondent-father and the children, Janer R., Thelmary R., and Kenneth R.
The court finds by clear and convincing evidence that respondent-mother Solmaria V. has failed to rehabilitate to such degree as would encourage the belief, that within a reasonable time, considering the age and needs of these children, she could assume a responsible position in Janer R., Thelmary R., and Kenneth R.'s lives.
The Court finds that the credible evidence establishes that these children were neglected and uncared for and have been in the custody of DCF continuously since November of 1997, with the initial involvement dating back to February of 1994 and that the respondent-mother had been provided specific steps on March 4, 1998 to take to facilitate the return of these children and that she has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of these children, she could assume a responsible position (as a parent) in the lives of these children. See, In re Eden F., 250 Conn. 674, 706, reargument denied,251 Conn. 924 (1999). The Court defines "`personal rehabilitation' as used in [C.G.S. § 17a-112] as . . . the restoration of a parent to his or her former constructive and useful role as a parent." In reFelicia D., 35 Conn. App. 490, 501, cert. denied, 231 Conn. 931 (1994).
The credible evidence establishes that the respondent-mother was, at best, erratic in both securing housing and employment and did not consider the impact of her choices in these areas or its effects on her children. Solmaria V. has repeatedly shown poor judgment with her children and denial of critical negative issues in her life. She failed to attend scheduled visits with her children, failed to attend counseling sessions, and engaged in conduct that resulted in domestic violence and the use of illegal drugs. In addition to her denial of her own problems, CT Page 2348 she dearly shows a significant and problematic denial of the sexual abuses which occurred to her children while they were under her care. Her explanation that she was unaware of these occurrences is not credited by the Court.
Based upon the Court's review of the evidence presented at trial, the Court finds that the respondent-mother had been given a reasonable amount of time for her personal rehabilitation and has failed to do so in any meaningful manner. The Court finds that respondent-mother created conditions whereby termination was sought, and mother failed to avail herself of reunification services. In re Kelly S., 29 Conn. App. 600,616-18 (1992).
As to Jose M.:
The court finds by clear and convincing evidence that respondent-father Jose M., Sr. a.k.a. Edwin M.B. is deceased and that respondent-mother Solmaria V. has failed to rehabilitate to such degree as would encourage the belief, that within a reasonable time, considering the age and needs of this child, she could assume a responsible position in Jose M.'s life.
The Court finds that the credible evidence establishes that Jose M. was neglected and uncared for and has been in the custody of DCF continuously since November of 1997, with the initial involvement dating back to February of 1994 and that the respondent-mother had been provided specific steps on March 4, 1998 to take to facilitate the return of this child and that she has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of this child, she could assume a responsible position (as a parent) in the life of this child. See, In reEden F., 250 Conn. 674, 706, reargument denied, 251 Conn. 924 (1999). The Court defines "`personal rehabilitation' as used in [C.G.S. § 17a-112] as . . . the restoration of a parent to his or her former constructive and useful role as a parent." In re Felicia D., 35 Conn. App. 490, 501, cert. denied, 231 Conn. 931 (1994).
The credible evidence establishes that the respondent-mother was, at best, erratic in both securing housing and employment and did not consider the impact of her choices in these areas or its effects on her children. Solmaria V. has repeatedly shown poor judgment with all of her children and denies critical negative issues in her life. All of these characteristics were demonstrated throughout the pending matter regarding her children. She failed to attend scheduled visits with her children, failed to attend counseling sessions, and engaged in conduct that resulted in domestic violence and the use of illegal drugs. She did not CT Page 2349 successfully address, or even acknowledge her narcotics addiction. Her lifestyle has had a direct and negative effect on her relationship with her children.
Based upon the Court's review of the evidence presented at trial, the Court finds that the respondent-mother had been given a reasonable amount of time for her personal rehabilitation and has failed to do so in any meaningful manner. The Court finds that respondent-mother created conditions whereby termination was sought, and mother failed to avail herself of reunification services. In re Kelly S., 29 Conn. App. 600,616-18 (1992).
As to Henry R.:
The court finds by clear and convincing evidence that respondent-father Jose R. has consented to the termination of his parental rights and that respondent-mother Solmaria V. has failed to rehabilitate to such degree as would encourage the belief, that within a reasonable time, considering the age and needs of this child, that she could assume a responsible position in Henry R.'s life.
The Court finds that the credible evidence establishes that Henry R. was neglected and uncared for and has been in the custody of DCF continuously since November of 1997, with the initial involvement dating back to February of 1994 and that the respondent-mother had been provided specific steps on March 4, 1998 to take to facilitate the return of this child and that she has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of this child, she could assume a responsible position (as a parent) in the life of this child. See, In reEden F., 250 Conn. 674, 706, reargument denied, 251 Conn. 924 (1999). The Court defines "`personal rehabilitation' as used in [C.G.S. § 17a-112] as . . . the restoration of a parent to his or her former constructive and useful role as a parent." In re Felicia D., 35 Conn. App. 490, 501, cert. denied, 231 Conn. 931 (1994).
The credible evidence establishes that the respondent-mother was, at best, erratic in both securing housing and employment and did not consider the impact of her choices in these areas or its effects on her children. Solmaria V. has repeatedly shown poor judgment with all of her children and denies critical negative issues in her life. All of these characteristics were demonstrated throughout the pending matter regarding her children. She failed to attend scheduled visits with her children, failed to attend counseling sessions, and engaged in conduct that resulted in domestic violence and the use of illegal drugs. Her lifestyle has had a direct and negative effect on her relationship with her CT Page 2350 children.
Based upon the Court's review of the evidence presented at trial, the Court finds that the respondent-mother had been given a reasonable amount of time for her personal rehabilitation and has failed to do so in any meaningful manner. The Court finds that respondent-mother created conditions whereby termination was sought, and mother failed to avail herself of reunification services. In re Kelly S., 29 Conn. App. 600,616-18 (1992).
Required Findings:
Once the court finds that the allegations of the petition have been proven by clear and convincing evidence, the court must find, also by clear and convincing evidence, that termination is in the best interest of each child. In re Roshawn R., 51 Conn. App. 44, 52 (1998). "In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors." In re Tabitha P.,39 Conn. App. 353 (1995).
The Court having considered the credible evidence presented at trial as to each individual child makes the following findings:
1. Each respondent-parent had the opportunity to engage in timely and appropriate services provided to facilitate the reunion of each child with the parent. As to the respondent-mother these services included, but were not limited to: housing assistance, addiction assistance, individual counseling, and parenting groups; as to the respondent-father Manuel R. no services were given due to his lack of interest and involvement in the proceedings;
2. DCF made reasonable efforts to reunite each child with his! her family pursuant to the federal Child Welfare Act of 1980;
3. The terms of respondent-mother's specific steps are found in State's exhibit #2. The credible evidence shows that mother did not fulfill these requirements and continues to struggle with the same issues currently. There are no terms for respondent-father Manuel R. due to his lack of interest and involvement in the proceedings. The credible evidence shows that Manuel R. did not participate in any manner in these proceedings;
4. Janer R., Thelmary R., Jose M., Henry R. have all developed feelings and strong emotional ties towards the foster families with whom they live. Each of these children look to their foster family for care, comfort and support; Kenneth R. is a deeply disturbed child in need of intensive therapeutic intervention before a family setting would be CT Page 2351 appropriate;
5. Janer R. is fourteen years old; Thelmary R. is thirteen years old; Kenneth R. is eleven years old; Jose M. is nine years old; and Henry R. is seven years old;
6. Respondent-mother has not adjusted her circumstances to make it in the best interest of her children to return to her home in the foreseeable future. The Court finds that her contact was chaotic and resulted in detrimental setbacks for her children by permitting confusing and tumultuous situations to exist even during supervised visitations. Respondent-father Manuel R. has had no known contact with his children;
7. None of the respondent-parents have been prevented from maintaining a meaningful relationship with any child by unreasonable acts of the child, the other parent, or any other person, or by economic circumstances.
These seven statutory factors are guidelines for the court and not prerequisites that must be proven before termination of parental rights is ordered. In re Quanitra M., 60 Conn. 96, 104, cert. denied, 255 Conn. 903
(2000). DCF is not required to prove by clear and convincing evidence each of the seven factors prior to the court's finding that termination of parental rights is in the child's best interest. Id., 105. This Court determines that based on the facts and the evidence presented that each of these factors has in fact been established by clear and convincing evidence as to each child.
Disposition:
A hearing for a contested termination of parental rights has two phases: (1) Adjudication, in which the court determines whether a statutory ground for termination exists by clear and convincing evidence, and (2) Dispositional, in which the court determines whether termination is in the best interests of the child. In re Kasheema L.,56 Conn. App. 484, 487, cert. denied, 252 Conn. 945 (2000). Evidence on adjudication is limited to events preceding the filing of the petition or the latest amendment. Evidence on disposition includes events occurring through the final hearing. In re Tabitha P., 39 Conn. App. 353, 367
(1995).
The Court finds that the grounds for termination alleged against each respondent-parent have been proven by clear and convincing evidence. The Court has made the seven written findings required by law, all of which weigh in favor of termination being in each individual child's best interest. "The best interests of the child include the child's interests CT Page 2352 in sustained growth, development, well-being, and continuity and stability of its environment." In re Shyina B., 58 Conn. App. 159, 167
(2000).
The Court concludes from clear and convincing evidence that it is in the best interest of Janer R., Thelmary R., and Kenneth R. to have permanency and stability in their lives. Accordingly, it is in their best interests that their parents' rights to them be terminated.
The Court therefore orders that a termination of parental rights enter with respect to Manuel R. and Solmaria V. The Court appoints the Commissioner of the Department of Children and Families as the statutory parent. The Court further orders a permanency and review plan to be filed for Janer R., Thelmary R., and Kenneth R. in accordance with State and Federal law.
The Court concludes from clear and convincing evidence that it is in the best interest of Jose M. to have permanency and stability in his life. Accordingly, it is in his best interests that his remaining parent's rights to him be terminated.
The Court therefore orders that a termination of parental rights enter with respect to Solmaria V. The Court appoints the Commissioner of the Department of Children and Families as the statutory parent. The Court further orders a permanency and review plan to be filed for Jose M. in accordance with State and Federal law.
The Court concludes from clear and convincing evidence that it is in the best interest of Henry R. to have permanency and stability in his life. Accordingly, it is in his best interests that his parents' rights to him be terminated.
The Court therefore orders that a termination of parental rights enter with respect to Jose R. and Solmaria V. The Court appoints the Commissioner of the Department of Children and Families as the statutory parent. The Court further orders a permanency and review plan to be filed for Henry R. in accordance with State and Federal law.
Ordered this 28th day of February, 2002:
JOAN K. ALEXANDER, JUDGE CHILD PROTECTION SESSION