MEMORANDUM OF DECISION
This case presents a coterminous proceeding based on petitions filed by the Department of Children and Families (DCF) asking that the child Sharay N. be adjudicated a neglected child and that the parental rights of her respective parents Rondell N. and Brenda K. be terminated.
On 11-02-02, DCF filed a petition in this court alleging that Sharay N. was neglected. The parties were properly served. The father appeared and was appointed counsel. The mother never appeared and a default judgement was entered against her 12-18-01.
On 03-14-02, DCF filed a petition in this court to terminate the parental rights of Rondell N. and Brenda K. The parties were properly served. The father appeared and an attorney was appointed to represent him. The mother never appeared and a default judgement was entered against her on 04-10-02.
In the neglect petition, DCF alleges that Sharay was being denied proper care and that she was being allowed to live under conditions or circumstances injurious to her well being. They further allege that she had been abused and has a condition, which is the result of maltreatment such as sexual molestation. General Statutes § 46b-1-20 (8)(B)(C) (D)
In the termination proceeding DCF alleges that the mother has abandoned her child. General Statutes § 17a-112 (j)(A). The second count of the petition alleges that both parents by acts of commission or omission have denied their child the proper care, guidance, or control necessary for her physical, moral, or emotional wellbeing. General Statutes §17a-112 (j)(C). The third count alleges that there is no ongoing parent-child relationship with both mother and father. General Statutes CT Page 9342 § 17a-12 (j)(D).
The matter was tried to the court on 06-14-02. The respondent father was present and was accompanied by a guardian ad litem who had been appointed on his behalf as well as the respondent's appointed counsel. Also present were attorneys representing DCF and the child. The respondent mother did not appear for the trial. All counsel participated in the examination of witnesses and closing argument. The petitioner called three witnesses: Detective Cheryl Gogins, Anabella Agudel, and Annette Charles. The respondent and the child did not call any witnesses. The petitioner introduced six exhibits: Dr. Krulee's evaluation dated 01-04-02, Dr. Mantell, evaluation dated 02-07-02, Dr. Krulee's evaluation dated 03-31-02, Dr. Mantell's evaluation dated 06-11-02, the written statement of Rondell M., a diagnostic interview, and the social study. The respondent and the child did not introduce any exhibits.
The court finds that it has proper jurisdiction of the matter and that there are no pending actions affecting the custody of the minor child. The court has carefully considered the evidence and testimony presented and the arguments of counsel, according to the standards required by law. On the basis of the evidence presented and for the reasons stated below, the court finds in favor of the petitioner and finds that Sharay N. is a neglected child. The court also finds in favor of the petitioner on the issue of termination and hereby terminates the parental rights of the respective parents with regard to this child
This is a coterminous proceeding therefore the court must first decide the neglect issue before reaching the issue of termination.
FACTS
Sharay N. was born on 01-99 in Hartford CT. to Rondell N. and Brenda K. The mother is currently living in Queens, New York. She has failed to contact DCF concerning the welfare of her child or the status of the court cases. About two years ago she moved to New York. She has had little to no contact with the child and last saw her over a year ago. She left Sharay in the care of the father even after she had learned of allegations of sexual abuse relative to sister of Sharay. She has not contacted DCF concerning the wellbeing of her child or as to the status of the case. She informed the DCF worker she had received the letters from the worker and from the court but was too busy to come back to Hartford. She has not visited the child nor has she attempted to plan for the child. She last saw her child in June of 2001. She has a long history with DCF and has five children none of whom are in her care. CT Page 9343
Sharay resided with her father from the time of her birth until 10-31-01 when she was removed by the petitioner after the father admitted to sexually assaulting her countless times over a year long period. She is currently in a DCF legal risk home and is doing very well. The foster parents have expressed a willingness to adopt. Sharay has adapted to her new home. She is talkative and appears happy. She is affectionate with her foster parents and is bonded to them. Sharay seeks comfort from her foster parents and goes to them to have her needs met.
Rondell N., the father, was born in Hartford on 02-17-71. He graduated from Weaver High School in 1990. He was employed as a maintenance man for ten years at 135 High Street for Easter Seals Rehabilitation prior to his incarceration.
He was the primary caretaker for his daughter Sharay after the mother left and moved to New York. Detective Sheryl Gogins of the Hartford Police Department began an investigation in September of 2001 into allegations of sexual abuse by Rondell of another daughter, G., who was five years old at the time. He has also been arrested and charged with sexual assault relative to G.
During an interview at St. Francis Hospital Children Center, G., spontaneously disclosed that she had seen her father Rondell touch Sharay on her genital area. She stated that both her father and Sharay had their clothes off and that he was touching her sister with his "grey pointer."
Annabelle Agudelo who was employed by St. Francis as clinical child interview specialist conducted this interview. She has undergone special training and conducted over two hundred and fifty collaborative interviews of children who make reports of sexual abuse. The interviews are designed to elicit accurate reports in an open-ended manner without being suggestive or leading. She has been trained in and utilizes credibility enhancement techniques. The exams are conducted for the purpose of ascertaining the nature of the sexual abuse to determine the need for medical treatment and counseling. The interviews are also used for law enforcement and child protection purposes. Detective Gogins was able to observe the interview through a one-way mirror.
Detective Gogins met with the respondent father at his home on 10-25-01. She advised Rondell of the allegations. Rondell asked that his parents be there and they came over. An appointment was set up for Rondell to come to the police station on 10-31-01. On that day his mother drove him to the station at 50 Jennings Road. They arrived at 9:00 a.m. After a short wait, he went with Detective Gogins to the interview room. His mother waited in the lobby. Detective Gogins provided him with an opportunity to use the bathroom and inquired as to whether he needed anything to eat or CT Page 9344 drink or to use the bathroom. She advised him that he was free to leave at any time. He was alone with Detective Gogins. Detective Gogins advised him of his constitutional rights and he initialed those rights. She advised him of the nature of the allegations. Detective Gogins was the only police officer in the interview room with Rondell. He appeared somber and seemed to understand. He initially denied the allegations not unlike other accused. At some point Rondell stopped denying and admitted to the molestations (exhibit E). Detective Gogins then took his statement on a Hartford Police Department form, typing on a lap top computer, a verbatim account of Roundel's statement. Rondell was allowed to read the statement as it appeared on the screen. The detective also read it to him. He verbally acknowledged that it was accurate. A copy of the statement was produced. Detective Gogins read the statement to Rondell. He was allowed to read the statement. He then signed and swore to the accuracy of the statement. In his statement the respondent admitted to touching his daughter's "pocketbook" (vagina) over one hundred times and indicated that the touching included digital penetration. He also acknowledged that he knew that this type of touching was wrong. At that point, Rondell was placed under arrest. He is currently being held at Whiting Forensic Institution after having been found incompetent in the criminal proceedings.
The issue of Rondell's competency was also raised in the neglect proceedings. The court ordered a series of evaluations. David A. Krulee, M.D. concluded that while Rondell was mildly mentally retarded he did possess the ability to understand the nature of the child custody case. The doctor found that he had a basic conceptual understanding of a trial and the testimony of witnesses. Dr. Krulee found however that due to Rondell's communication difficulties involving both speech and language processing that he lacked the capacity to cooperate with his attorney under the circumstances normally encountered in a trial. The respondent therefore lacked the ability to adequately assist his attorney (exhibit A). Dr. Krulee felt that a guardian ad litem should be appointed to assist Rondell. The court did make that appointment. He also felt that an intellectual assessment should be performed on Rondell. That was also done.
David Mantell, Ph.D. conducted an intellectual assessment of the respondent (exhibit B). He determined that the respondent was functioning in the mildly mentally retarded range. It was Dr. Mantell's opinion that given his limitations, Rondell was probably not restorable. He also felt that a guardian ad litem should be appointed and with his assistance the respondent should be capable of participating in a juvenile court proceeding. He also recommended that the pace of the proceedings be slowed to allow for the respondent to process the information and communicate with his attorney with the assistance of his guardian. It would be CT Page 9345 necessary that the guardian be given time to have a series of meetings with the respondent prior to the trial in order to developing a rapport to facilitate communications.
After the guardian and Rondell held a series of meetings, Dr. Krulee conducted a follow up assessment of the respondent (exhibit D). His conclusions and opinions were consistent with his earlier ones. Dr. Krulee felt that the respondent did possess the intellectual ability to understand the child custody case against him. The respondent however still lacked the ability to assist his attorney due to speech, language processing and intellectual deficits. Based on the assessments that were done and the respondent's developmental, public educational, and work histories, Dr. Krulee felt that the deficits were permanent and the respondent not restorable. These deficits however would not prevent the respondent from expressing opinions about his custodial wishes for his child, his visitation or his family's visitation and custodial role provided a guardian was there to explain the legal proceedings slowly and carefully and to elicit from Rondell N. a clearer understanding of his wishes. He also recommended that the court allow for frequent breaks to enable the respondent to consult with his guardian and his attorney
The court appointed Attorney Stephen Melocowsky to act as guardian ad litem for the respondent. Attorney Melocowsky met with Rondell at least four times as recommended by the evaluators. Attorney Melocowsky attended the trial and sat next to the respondent. The court recessed after each witness testified to allow the respondent to consult with his attorney and guardian before cross-examination of the petitioner's witnesses took place.
NEGLECT AND UNCARED FOR ADJUDICATION
The court is required to proceed in three separate stages when neglect and termination petitions are coterminously filed. The court must first determine, by a fair preponderance of the evidence, if the child has been neglected or uncared for as of the date the petition was filed or last amended. In re Juvenile Appeal (84-AB) 192 Conn. 254, 263, 471 A.2d 1380
(1984); In re Emmanuel M., 43 Conn. Sup. 108, 111, 648 A.2d 904, aff'd.35 Conn. App. 276, 648 A.2d 881, cert. denied 321 Conn. 915, 648 A.2d 151
(1994).
The court finds by a fair preponderance of the evidence that Sharay N. is a neglected child. Her father admitted to sexually assaulting her over a hundred times. Her mother abandoned her by moving to Queens, New York and ceased all communications and contacts with her. Even after she had been made aware of evidence of sexual molestation she failed to return and take steps to see that Sharyo N. was properly cared for. Given the CT Page 9346 actions and conduct of both parents it is clear that Sharyo N. was being denied the proper care and attention physically and morally. She has been permitted to live under conditions injurious to her well being. She has been abused and has a condition, which is the result of sexual molestation.
RESPONDENT FATHER'S INCOMPETENCY
Prior to the commencement of the trial, the court concluded that the respondent father was not competent. A guardian ad litem was appointed for him. In making its decision to proceed to trial and to grant no-further continuances for Rondell N. to regain his competency, the court reviewed the case of In re Alexander v., 223 Conn. 557, 564,613 A.2d 780 (1993). In examining the due process issues implicated, our Supreme Court found that "there is a cognizable risk that a parent unable to assist his or her attorney or to understand the proceedings might suffer an erroneous termination of parental rights regardless of whether a guardian ad litem has been appointed pursuant to Connecticut General Statutes § 451-708(a)." In re Alexander v., supra, 563. In weighing that risk, the court had reviewed the procedural safeguards set forth inMatthews v. Eldridge. 424 U.S. 319, 96 S.Ct. 893 (1976) as providing assistance in the decision to proceed with the trial. As previously found, in the case of In re Aida M. and Carmelo O., Superior Court for Juvenile Matters, H12-CP96-000640, and H12-CP96-00064 (March 25, 1997, Foley J.), the court concludes that the multi-factored balancing test set forth in Matthews must be considered to ensure that all due process rights of the incompetent parent have been addressed before proceeding to a trial on the merits. It is an effort to balance the interests of the incompetent father in maintaining his family free of coercive state interference with the interest of Sharay N. in a safe and healthy childhood.
The first of the four concerns in Matthews is:
1. "Is it likely that the evidence presented could be refuted be a competent parent?" In this case there is clear and convincing evidence of sexual abuse committed by the father. There was a written confession admitted into evidence. There was corroborative evidence contained in the statement of G. At best, a person without the speech and language limitations of the respondent could have stated that the conduct did not happen or that the touching was merely of an innocent nature. Such testimony would not be persuasive given the strength of the evidence to the contrary. In fact, the respondent was able to proffer an innocent explanation during the court ordered evaluations when he attempted to minimize the contact as being incidental to changing diapers CT Page 9347
2. The second concern is "whether the parent could be restored to competence within a reasonable time, considering the age and needs of the child?" The evaluators were of the opinion that due to the respondent's intellectual, speech and language processing skills were such that his deficits were unrestorable (exhibit D, p. 4)
3. "If the father were competent, is there proof of the existence of or prospect of an existing parent-child relationship?" There was little evidence introduced on this issue. Given the nature of the allegations and the evidence of sexual abuse this element has little relevance to the proceeding.
4. "Was the respondent mother effectively represented by counsel and the guardian ad litem, given the difficulties attendant to such representation?" In this case, prior to the date scheduled for trial, the guardian met on at least four occasions with the respondent. He also met with the respondent's attorney in order to formulate trial strategy and plans. At the trial, counsel was not prevented in any way from presenting their client's case. The court granted them recesses in which to confer with their client and time for any need he had to confer with them. Neither had any witnesses to present to contest the state's case. Counsel was able to cross-examine all witnesses and to present and argue Rondell's case.
The court concludes that all of the factors to be considered by the court under a Matthews' analysis support proceeding to trial. The likelihood of an erroneous termination decision is slight in view of the substantial evidence establishing the sexual assault. That remote possibility is greatly outweighed by the child's needs, and the opportunity for counsel and her guardian to prepare with for the trial. The court concludes that the due process protections to which he is entitled have been provided to Rondell N. in the conduct of this trial. Permitting any further delay, will not necessarily result in any further improvement in Rondell N.'s condition and Sharay's best interests require the court to proceed without further delay
Reasonable Efforts Finding
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts." General Statutes §
The court finds by clear and convincing evidence that the petitioner has met this burden. Brenda K. has demonstrated no interest whatsoever in CT Page 9348 her daughter Sharyo. She moved to New York and severed all ties with the child. The petitioner introduced evidence that DCF made efforts to notify her regarding the reports of sexual abuse and the status of the case. She responded with disbelief and that she was too busy to come to Connecticut to address her child's needs. It is clear that she is unwilling to benefit from reunification efforts.
The court also finds that the petitioner has met its statutory obligation with respect to the father. The court has found that the respondent father has sexually assaulted his daughter on a repeated basis. The court also noted that the father is currently being held as a result of criminal charges stemming from those assaults. His future is uncertain at this time. The court finds that he is unable to benefit from reunification efforts particularly in light of Sharay's need for permanency.
ADJUDICATION
Each statutory basis set out in General Statutes § 17a-112 (j) is an independent ground for termination. In re Baby Girl B. 224 Conn. 263. The petitioner is required to prove at least one of the grounds alleged in its petition by clear and convincing evidence.
Abandonment as to mother Brenda. K. General Statute § 17a-112 (j)(3)(A)
This ground is established when the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the child. Sporadic efforts are insufficient to negate the claim of abandonment. The test for determining abandonment of a child for purposes of termination of parental rights is not whether a parent has shown "some interest" in his child, but rather whether the parent has maintained any reasonable degree of interest concern or responsibility as to the child's welfare. In re Rayna M. 13 Conn. App. 23 (1987).
Attempts to achieve contact with a child telephone calls, the sending of cards and gifts and financial support are indicia of "interest, concern, or responsibility". In re Migdalia M. 6 Conn. App. 194 (1986).
The court finds by clear and convincing evidence that the petitioner has proved this count with respect to the respondent mother. The mother has not visited or called the child since June 2001 and left the child with the father even though she knew of the allegations of sexual abuse by the father to an older sibling. She has not recognized the child on special occasions by sending cards or making phone calls. She has not CT Page 9349 maintained contact with the child's caretaker although she knew of the caretaker and had the phone number.
The court finds that the petitioner has established this ground by clear and convincing evidence.
Acts of Commission or Omission as to father, Rondell N. and mother BrendaK. General Statutes § 17a-112 (j)(3)(C)
General Statutes § 17a-112 (j)(3)(C) makes it a ground for termination of parental rights when the child "has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being." This provision authorizes termination when "specific acts of parental commission or omission" have caused physical or emotional injury to the child. (Internal quotation marks omitted). See In re Felicia D.,35 Conn. App. 490, 502, 646 A.2d 862, cert. denied, 231 Conn. 931,649 A.2d 253 (1994).(fn7) The ground does not permit termination "based on speculation as to what acts may befall a child." In re Kelly S.,29 Conn. App. 600, 614, 616 A.2d 1161 (1992).
The father's repeated sexual abuse of Sharay is the most obvious and egregious act of commission in this case. Furthermore, the mother knew what the father was doing and failed to prevent it or at least seek help. Her failure to protect Sharay from sexual abuse qualifies as an act of omission. See In re Tabitha T,. 51 Conn. App. 595, 603, 722 A.2d 1232
(1999); In re Felicia D., supra, 35 Conn. App. 502. Accordingly, the evidence clearly and convincingly establishes the ground of acts of commission and omission.
No Ongoing Parent-Child Relationship as to mother Brenda K. and fatherRondell N. General Statutes § (j)(3)(D)
General Statutes § 17a-112 (j)(3)(D), provides that the court may grant a petition to terminate parental rights if it finds by clear and convincing evidence that "there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child. . . ."
"This part of the statute requires the trial court to undertake a two-pronged analysis. First, there must be a determination that no parent-child relationship exists, and second, the court must look into the future and determine whether it would be detrimental to the child's best CT Page 9350 interest to allow time for such a relationship to develop. In considering whether an ongoing parent-child relationship exists, the feelings of the child are of paramount importance. . . . The ultimate question is whether the child has no present memories or feelings for the natural parent. . . . Feelings for the natural parent connotes feelings of a positive nature only." In re Jonathon G., 63 Conn. App. 516, 525, 777 A.2d 695
(2001) In re Alexander 67 Conn. App. 417.
The mother's conduct in this case, abandoning the child, moving to New York and demonstrating no interest or concern in the welfare of her child allows the court to find by clear and convincing evidence that there is no ongoing parent child relationship. The court also finds by clear and convincing evidence to allow time for such a relationship to develop would be detrimental to the best interest of the child. As reflected by statute, 17a-11a, and case law, In re Juvenile Appeal 189 Conn. 276
(1983), the need for permanency in these cases is critical.
With respect to the respondent father the court finds that the petitioner has not proved this count by clear and convincing evidence. The petitioner is essentially asking the court to infer that as a result of the sexual abuse the only feelings that Sharay will have for her father are negative ones. Obviously due to Sharay's age she was unable to be questioned as to what her feelings toward her father are. There was no evidence introduced on this issue other than statements in the social study (exhibit G) as to Sharay's feelings and memories without attribution to their source. The statements were conclusory in nature and lacked a factual basis. The court feels that to draw the necessary inferences is too speculative.
DISPOSITION
The court has found by clear and convincing evidence that all the statutory grounds alleged by the petitioner for the termination of Brenda K's parental rights have been proven. The court also found that one of the statutory grounds alleged by the petitioner with respect to Rondell N. exists. Proof of one of the grounds alleged is sufficient to support termination. In re Shane, 58 Conn. App. 234. Before making a decision whether or not to terminate the respondent's parental rights, the court must now consider and make findings on each of the seven criteria set forth in Sec. 17a-112 (k). In re Romance, M. 229 Conn. 345 (1994)
These criteria and the court's findings, which have been established by clear and convincing evidence are as follows:
1. The timeliness, nature, and extent of services offered or provided to facilitate the reunion of child with parent. CT Page 9351
DCF did not provide any services to the respondent parents. The mother had left the state and exhibited no interest in reunification. The father was incarcerated for his sexual abuse of Sharay that led to the filing of the petition for termination. Given his status, DCF was not in position to offer any services.
2. Whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Child Welfare Act of 1980.
DCF located the mother in New York the sent her letters and spoke to her on the phone. She was unwilling to take advantage of any of the services DCF was prepared to offer. She was unwilling to benefit from reunification services.
3. The terms of any applicable court order, and the extent to which the parties have fulfilled their obligations under the order.
Steps were never issued for mother due to her failure to appear for any of the court proceedings. Steps were issued for the father but were suspended due to the issue of his competency
4. Feelings and emotional ties of the child with respect to his parents and any person who exercised physical care, custody and control of the child for at least one year with whom the child has developed significant emotional ties.
There was no evidence introduced that revealed any feelings or emotional ties Sharay had for her birth parents. Sharay is bonded to her foster parents and is affectionate towards them and will readily embrace them.
5. The age of the Child
Sharay is three and a half years old.
6. Parents efforts to adjust their circumstances to make it in the best interest of the child to return him to his home in the foreseeable future, including the extent of parental contact or communication the child's guardian or custodian.
Brenda K. has made no effort to adjust her circumstances to make it in Sharay's best interest to return to her home. Rondell. N. was arrested and initially held in lieu of bond. He was subsequently found to be incompetent and has been committed to Whiting Forensic Institute. CT Page 9352
7. Extent to which the parents has been prevented from maintaining a meaningful relationship with the child by unreasonable acts of the child, other parent, or other person or economic circumstances.
There was nothing to indicate that Brenda K. was prevented from maintaining a meaningful relationship with her daughter. She chose not to be a mother to her child. The father was unable to maintain a meaningful relationship due to acts for which he was responsible. He was arrested and incarcerated for sexually assaulting two of his children.
Best Interests of the Child
The court must now address the issue of whether termination of parental rights is in the best interest of the child. This is part of the dispositional phase of a termination proceeding In re Valerie D.223 Conn. 511
Sharay is about three and a half years old. She as does every child needs permanency in her life. She has been with the same family since her removal on 10-31-01. She was placed in a legal risk home meaning the family is interested in adoption. She is significantly bonded to this family. Her father does not have the knowledge, skill, or capability of dealing with a child. His future is very uncertain. The court has found that he has sexually assaulted Sharay. He must deal with the criminal charges that stem from his conduct. He is not in a position to serve as a responsible parent. Sharay's mother has shown little interest in Sharay. There is no evidence of any bond or affection between the two. The respondent mother is not interested in developing one. Clear and convincing evidence therefore exists that termination of parental rights is in Sharay N's best interest.
CONCLUSION
Based upon the foregoing findings and having considered all of the evidence, statutory considerations and having found by clear and convincing evidence that grounds exist for termination of parental rights, the court further finds upon all the facts and circumstances presented that it is in the child's best interest to terminate the parental rights of Rondell N. and Brenda K. Accordingly, it is hereby terminate their parental rights to Sharay
It is further ordered that Commissioner for Children and Families is appointed statutory parent for Sharay N. The Commissioner is to file with the court no later than thirty days following the date of judgement, a written report toward a permanent plan for the child.
The court further finds that the Department of Children and Families has made reasonable efforts to effectuate their permanency plan.
Dannehy, J,
CT Page 9353